ORIGINAL

FILED

DEC 2 6 2006

U.S. COURT OF
FEDERAL CLAIMS

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

QUECHAN TRIBE OF THE FORT YUMA
INDIAN RESERVATION,

      **Plaintiff**

      v.

**THE UNITED STATES,**

      **Defendant**

No. 06 - 888 L

### COMPLAINT

The Quechan Tribe, by and through the undersigned attorney of record, brings the following Complaint against the United States and alleges as follows:

### NATURE OF ACTION

1.    This is an action by the Quechan Tribe (herein the "Tribe"), seeking money damages and an accounting against the United States (herein the "United States") for breaches of fiduciary trust duties in regard to management by the United States of the trust funds, resources, and other assets of the Quechan Tribe from January 9, 1884. This action arises out of the United States' breach of constitutional, statutory, regulatory, and common law trust duties owed to the Tribe.

### PARTIES

2.    The Tribe is a sovereign and federally recognized Indian tribe, possessing all legal rights and responsibilities afforded to federally recognized Indian tribes. The Tribe is eligible for the special programs and services provided by the United States to federally recognized Indian tribes.

3.    The United States, as a matter of constitutional, statutory, regulatory, and federal common law, is trustee and a fiduciary to the Tribe and is charged with carrying out trust duties and responsibilities with regard to the management and administration of the Tribe's trust funds and other trust assets.

### JURISDICTION

4.    This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1505 (the Indian Tucker Act) and 1491 (the Tucker Act), as this action involves a claim against the United States for money damages brought by an Indian tribe arising under the Constitution, laws, treaties, or regulations of the United States, or Executive Orders of the President, including, but not limited to:

4.1.    The Executive Order of Chester A. Arthur, of January 9, 1884, and the Executive Order of William McKinley, of December 19, 1900, setting aside the Fort Yuma Indian Reservation in California and Arizona in trust for the exclusive benefit of the Tribe.

4.2.    The Act of December 22, 1987, Pub. L. No. 100-202 and the Act of September 27, 1988, Pub. L. No. 100-446, which require the Bureau of Indian Affairs (the "BIA") to audit and reconcile tribal trust funds, and to provide tribes with an accounting of such funds;

4.3.    The Act of October 23, 1989, Pub. L. No. 101-121, the Act of November 5, 1990, Pub. L. No. 101-512, and the Act of November 13, 1991, Pub. L. No. 102-154, all of which require the BIA to audit, reconcile, and certify through an independent party the results of the reconciliation of tribal trust funds as the most complete reconciliation of such funds possible, and to provide tribes with an accounting of such funds;

4.4.    The Act of October 25, 1994 (The American Indian Trust Fund Management Reform Act of 1994), Pub. L. No. 103-412, codified at 25 U.S.C. §§ 161a, 162a, and 4001-4061 (1997), which imposes various accounting, auditing, fund management, reconciliation, and reporting obligations on the United States;

4.5.    Other statutes that describe specifically and generally the United States' duties as a fiduciary and a trustee in managing the Tribe's trust funds, including, but not limited to:  25 U.S.C. §§ 111-148 (Disbursements of Moneys and Supplies); 25 U.S.C. §§ 151-166 (Deposit, Care, and Investment of Indian Moneys), and selected statutes of Title 31 of the United States Code;

4.6.    Other statutes that describe specifically and generally the United States' duties in managing the Tribe's land and other non-monetary trust resources and assets, including without limitation:

4.6.1.    Pub. L. 102-575, Title XXX, §§ 3009(8) and (9) (water);

4.6.2.    25 U.S.C. § 312 (railroad, telegraph, and telephone rights-of-way);

4.6.3.    25 U.S.C. § 319 (telegraph and telephone rights-of-way);

4.6.4.    25 U.S.C. § 320 (railroad rights-of-way);

4.6.5.    25 U.S.C. § 321 (oil and gas pipeline rights-of-way);

4.6.6.    25 U.S.C. §§ 323 – 328 (rights-of-way);

4.6.7.    25 U.S.C. §§ 396a – 396g (mineral leases);

4.6.8.    25 U.S.C. § 402a (agriculture leases);

4.6.9.    25 U.S.C. § 415 (general leasing);

4.6.10.    25 U.S.C. §§ 3701 – 3745 (agriculture leases);

4.6.11.   25 U.S.C. §§ 3701 – 3745 (agricultural resource management);
and other selected statutes under Title 25 and other Titles of the United States Code.

4.7.   The Interior Department Appropriations Act of 1990, Pub. L.
No. 101-512, 104 Stat. 1915, and each Interior Department Appropriations Act annually
thereafter, including the Act of August 2, 2005, Pub. L. No. 109-54, 119 Stat. 519, providing that
"the statute of limitations shall not commence to run on any claim concerning losses to or
mismanagement of trust funds until the affected tribe or individual Indian has been furnished
with an accounting of such funds from which the beneficiary can determine whether there has
been a loss";

4.8.   The Act of March 19, 2002, Pub. L. 107-153, 116 Stat. 79, as amended
by the Act of December 30, 2005, Pub. L. 109-158, 119 Stat. 2954, providing that
"[n]otwithstanding any other provision of law, for purposes of determining the date on which an
Indian tribe received a reconciliation report for purposes of applying any statute of limitations,
any such report provided to or received by an Indian tribe in response to section 304 of the
American Indian Trust Management Reform Act of 1994 shall be deemed to have been received
by the Indian tribe on December 31, 2000";

4.9.   Regulations that describe specifically and generally the United States'
duties in managing the Tribe's trust funds including:  25 C.F.R. Chap. I, Bureau of Indian
Affairs, Department of the Interior, Subchapter G—Financial Activities, and selected United
States Treasury regulations;

4.10.   Regulations that describe specifically and generally the United States'
duties in managing the Tribe's land and other non-monetary trust resources and assets, including,

4

without limitation, those found in 25 C.F.R. Parts 162 (leasing), 169 (rights-of-way), and 211 (minerals);

        4.11.   Written policies and manuals published by various United States Departments and Agencies that describe specifically and generally the United States' duties in managing the Tribe's trust funds, land, and other non-monetary assets.

        5.   This court also has jurisdiction over the subject matter of this action under a well-developed body of federal common law describing and defining the fiduciary relationship between the United States and the Tribe, created by the statutes, orders, and regulations listed above.

## ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

        6.   The Quechan Tribe occupies the Fort Yuma Indian Reservation (the "Reservation") located in the states of Arizona and California, and is the beneficial owner of land and natural resources within the Reservation, title to which is held in trust by the United States for the benefit of the Tribe.

        7.   Lands held in trust by the United States for the benefit of an Indian tribe are inalienable except as authorized by Congress.  Congress has granted the Secretary of Interior authority to approve conveyances of interests in trust land such as leases, easements, and rights-of-way.  The Secretary of the Interior exercises comprehensive regulatory control over the management of lands and resources held in trust for Indian tribes, including those lands and resources held in trust for the Quechan Tribe.

        8.   The Secretary of the Interior has been charged by Congress with the duty to collect income derived from the Tribe's trust assets and to deposit such income in the United States Treasury and other depository institutions for the benefit of the Tribe.

9.     Congress has further directed that interest be paid on the Tribe's funds held in trust and required that such trust funds be invested. Pursuant to the duties and authority delegated by Congress, the Secretary of the Interior exercises comprehensive control over the Tribe's trust funds.

10.     During the time period encompassed by this action the United States exercised comprehensive statutory and regulatory control over the management of the Tribe's monetary and non-monetary trust assets. The United States has approved leases, rights-of-way, and other conveyances of interest in trust lands of the Tribe. The United States has controlled, conducted, and managed the collection, deposit, investment, and disbursement of the income derived from the Tribe's trust assets, including, but not limited to, funds derived from leases and other contracts and agreements with the Tribe and/or the United States.

11.     Under longstanding constitutional, statutory, and federal common law, and based upon the historic relationship between the United States and Indian tribes, the United States assumed the obligations and duties of a trustee by establishing and maintaining comprehensive regulatory control of tribal trust lands and resources and the funds derived therefrom. The United States owes a trust duty to the Tribe with regard to the Tribe's trust funds and other trust assets. In the exercise of that trust duty, the United States is held to the most exacting fiduciary standards.

12.     The United States has failed to perform a full, complete, and accurate accounting and reconciliation of the Tribe's trust fund accounts as required by federal law.

13.     In 1996, the BIA caused to be completed an accounting report of limited and incomplete scope prepared by Arthur Andersen LLC entitled "Agreed-Upon Procedures and Findings Report for Quechan Tribe, July 1, 1972 Through September 30, 1992" (herein "the

Arthur Andersen Report"). The Arthur Andersen Report did not analyze or report on the United States' management of the Tribe's trust funds and accounts from the period January 9, 1884 through July 1, 1972, nor from September 30, 1992 to the present day.

14.    The Arthur Anderson Report did not analyze or report on the United States' management of non-monetary trust assets of the Tribe for the period January 31, 1884 to the present day.

15.    The Arthur Anderson Report stated that "the primary objective of the Reconciliation Project, as stated in the Contract [with the BIA], is to reconstruct historical transactions, to the extent practicable, for all years for which records are available for all Tribal Trust accounts managed by the Bureau." Arthur Anderson Report, at p. 1. Further, the Arthur Anderson Report stated that "the Bureau has advised us that not all the source documents for the Reconciliation period could be located." *Id.* By its own terms, the Arthur Andersen Report does not constitute an audit made in accordance with generally accepted auditing standards. The Arthur Andersen Report stated that "had we performed additional procedures or had we made an audit of the financial statements of the Trust Funds managed by the Bureau in accordance with generally accepted auditing standards, other matters might have come to our attention that would have been reported to you." *Id.* at p. 4.

16.    Despite the limitations of the Arthur Andersen Report, and its incomplete nature, the Arthur Andersen Report discloses evidence of mismanagement of the Tribe's trust funds by the United States.

17.    The United States has breached its fiduciary and statutory duties owed to the Tribe by mismanaging the Tribe's lands and natural resources, and the income and funds derived therefrom. The mismanagement goes far beyond that reported in the Arthur Andersen Report.

18.     Upon information and belief, as a result of the United States' mismanagement, the Tribe has lost funds, royalties, interest income, profits, and proceeds which would have been earned, collected, and invested for the benefit of the Tribe if the United States had sufficiently performed its fiduciary administration and management duties.

## FIRST CLAIM FOR RELIEF

### (Breach of Fiduciary Trust Duty – Mismanagement of Trust Assets)

19.     From January 9, 1884 to the present day, the United States has violated its trust duty to the Tribe in the management of the Tribe's Trust Funds and Trust Assets in one or more of the following ways:

19.1.     By failing to credit the Tribe's trust fund accounts for the total amount of income derived from the sale or lease of land and other resources held in trust for the Tribe, or otherwise derived from the management of such resources under the United States' management and control;

19.2.     By failing to credit the Tribe's trust fund accounts for amounts paid to it or due to it from other sources;

19.3.     By failing to properly record all transactions pertaining to the Tribe's trust fund accounts;

19.4.     By failing to implement effective cash management practices;

19.5.     By failing to deposit the Tribe's trust funds in interest bearing accounts;

19.6.     By failing to deposit the Tribe's trust funds in interest bearing accounts in a timely manner;

19.7.     By holding the Tribe's trust funds in the United States Treasury at inadequate interest rates;

19.8.   By holding the Tribe's trust funds in various investments paying inadequate interest rates;

19.9.   By utilizing and expending the Tribe's trust funds for purposes not for the exclusive benefit of the Tribe;

19.10.  By otherwise failing to invest and manage the Tribe's trust funds as a prudent trustee to earn the maximum income for the Tribe;

19.11.  By applying the Tribe's trust funds in a manner not authorized by law;

19.12.  By failing to obtain the maximum income for the sale, use, or lease of the Tribe's non-monetary trust assets, including, but not limited to, the Tribe's lands and natural resources;

19.13.  By failing to collect, deposit, and invest funds due and owing to the Tribe for the sale or lease of its non-monetary trust assets or otherwise derived from the management of its non-monetary trust assets;

19.14.  By failing to timely collect, deposit, and invest funds due and owing to the Tribe for the sale or lease of its non-monetary trust assets, or otherwise derived from the management of the Tribe's non-monetary trust assets;

19.15.  By maintaining and operating a tribal trust fund system that is inadequate to properly and effectively manage tribal trust funds, and utilizing this system to manage the Tribe's trust funds;

19.16.  By failing to maintain adequate systems and controls in the tribal trust fund system to guard against error and dishonesty;

19.17. By failing to maintain adequate records with regard to tribal trust funds, and failing to properly store tribal trust account documents so that an effective audit and reconciliation can be performed;

19.18. By failing to perform regular and accurate accountings of tribal trust funds and assets for the trust beneficiary, the Quechan Tribe, as required by law; and

19.19. By such other management and accounting failures as may be discovered throughout the course of this litigation.

20.     For purposes of this First Claim for Relief the term "Trust Funds" includes, without limitation, all monetary trust assets, accounts, income, and interest, funds held on deposit, invested funds, and any other tribal-related monetary funds accounts established pursuant to federal law that are maintained, managed, invested, or controlled by either the Department of Interior or Treasury; any proceeds-of-labor accounts, Indian monies proceeds-of-labor accounts, special deposit accounts, or Treasury accounts (principle and interest) held for the benefit of the Tribe; legislative settlement or award accounts; judgment accounts; and all other funds of any kind held, controlled, or invested by the United States, or its agencies, in trust for the Tribe. The term "Trust Assets" includes the Tribe's non-monetary trust resources and assets, including, without limitation, the lands and natural resources of the Tribe.

21.     Mismanagement by the United States of the Tribe's trust funds, resources, and assets breaches fiduciary trust duties that arise out of statutes, regulations, executive orders, and federal common law described above.

22.     As a result of the United States' breaches of its fiduciary trust duties with regard to the Tribe's trust funds, resources, and assets throughout the relevant time periods, the Tribe

has been damaged and seeks compensatory damages against the United States, interest, costs, attorneys' fees, and all other and further relief as this Court deems just and proper.

## SECOND CLAIM FOR RELIEF

### (Full and Complete Accounting and Document Preservation)

23.     Because the United States has failed to provide the Tribe with an accounting consistent with federal law or the requirements of generally accepted accounting principles and auditing standards, the Tribe is entitled to an order of this Court compelling an accounting to aid the Court in a final determination of damages to which the Tribe is entitled.

24.     Ancillary to this demand for an accounting, the Tribe is entitled to an order from this Court directing the United States to preserve all records relating to the Tribe's trust funds, accounts, and assets.

25.     Under applicable federal trust law principles between the United States as trustee and the Quechan Tribe as Indian tribal beneficiary, in addition to the federal statutes that require the United States to perform an audit, reconciliation, and certification, the Tribe is entitled to all documents and information about its trust funds, accounts, and assets in the possession of the United States. This includes all relevant documents and information about the terms of the trust, its present status, past acts of management or other incidents of the administration of the trust, including investments, which information is in the custody, possession, or control of the United States or its agents. The United States is obligated to provide the Tribe with this information, and the Tribe requests that this Court enter an appropriate Order requiring the United States to provide the Tribe with this information.

**WHEREFORE,** the Quechan Tribe requests the Court to award the following relief:

1.      To enter judgment in favor of the Quechan Tribe and against the United States for compensatory damages in an amount to be determined at trial;

2.      To order the United States to perform a complete accounting for all trust funds, resources, and assets of the Tribe in the care, custody, or control of the United States from January 9, 1884 to the present;

3.      To immediately order the United States to preserve all records of any kind whatsoever pertaining to the Tribe's trust funds, resources, and assets during the pendency of this action;

4.      To grant the Tribe prejudgment interest, costs, and attorneys' fees in this litigation as may be provided by law; and

5.      To grant the Tribe such other and further relief as the Court deems appropriate.

//

//

//

//

//

//

//

//

//

//

//

DATED this 22nd day of December, 2006.

By _____
Frank R. Jozwiak
*Attorney of Record for Quechan Indian Tribe*
Morisset, Schlosser, Jozwiak & McGaw
1115 Norton Building
801 Second Avenue
Seattle, Washington 98104-1509
Telephone:     206-386-5200
Facsimile:     206-386-7322
f.jozwiak@msaj.com

Kyme A.M. McGaw
*Of Counsel for Quechan Indian Tribe*
Morisset, Schlosser, Jozwiak & McGaw
1115 Norton Building
801 Second Avenue
Seattle, Washington 98104-1509
Telephone:     206-386-5200
Facsimile:     206-386-7322
k.mcgaw@msaj.com

T:\WPDOCS\0267\10074\Pleadings\COMPLAINT 006.doc
kfb 12/22/06