IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| QUECHAN TRIBE OF THE<br>FORT YUMA INDIAN RESERVATION, | ) | |
| Plaintiff | ) | |
| v. | ) | No. 06cv888-SGB<br>Judge Susan G. Braden |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**JOINT PRELIMINARY STATUS REPORT**

Pursuant to the Court's order of August 2, 2007 and Appendix A of the Rules of the Court of Federal Claims ("RCFC"), Plaintiff Quechan Tribe of the Fort Yuma Indian Reservation ("Plaintiff" or "Tribe") and Defendant United States of America ("Defendant" or "United States"), through the undersigned counsel, hereby submit this Joint Preliminary Status Report ("JPSR") to the Court.

## I. PLAINTIFF'S INTRODUCTORY STATEMENT

On December 27, 2006, Plaintiff filed this case against the United States under the Tucker Act, 18 U.S.C. § 1491, and the Indian Tucker Act, 28 U.S.C. § 1505. Docket No. (Dkt. No.) 1. Plaintiff alleges claims for breach of fiduciary duty by Defendant in its administration and management of Plaintiff's trust funds, reserves, and assets and seeks a complete accounting and reconciliation of the Tribe's trust funds; monetary damages; pre judgment interest; costs and attorneys' fees; and such other relief that this Court deems appropriate. Plaintiff seeks to litigate its trust fund mismanagement claims in phases, with Phase 1 covering its mismanagement claims for the time period of Fiscal Years (FYs) 1972 to the present.

## II. DEFENDANT'S INTRODUCTORY STATEMENT

In this case filed on December 26, 2007, under the Tucker Act, 18 U.S.C. § 1491, and the Indian Tucker Act, 28 U.S.C. § 1505, Dkt. No. 1, Plaintiff broadly alleges that Defendant has breached its fiduciary duties to Plaintiff in its administration of Plaintiff's trust funds, resources, and other Tribally owned assets, and Plaintiff seeks compensatory or monetary damages for those alleged breaches. Id.

As set forth, in relevant part, in its Answer filed in this case on September 28, 2007, Dkt. No. 15, and as discussed in greater detail below, Defendant asserts various jurisdictional defenses that bar all or some of Plaintiff's claims in this litigation. Defendant's assertion of the jurisdictional defenses, however, must await Plaintiff's detailed specification of its claims and the factual and legal bases for those claims. Once Plaintiff's claims have been clearly defined and delineated, Defendant intends to raise other jurisdictional defenses, if warranted, including the applicable statute of limitations, the failure to state money mandating claims, *res judicata*, and the exclusive jurisdiction of the Indian Claims Commission (ICC). Defendant proposes to apply this approach to the phased case development and trial strategy being contemplated by Plaintiff herein.

To the extent that the Court has jurisdiction over any of Plaintiff's claims herein, Defendant believes that those claims would be resolved by dispositive motions or, if necessary, trial. Defendant proposes that the scheduling of any additional fact discovery, expert witness discovery, and pre-trial and trial dates await the Court's ruling on the threshold jurisdictional issues.

## III. PARTIES' REPORT PURSUANT TO RCFC, APPENDIX A

Pursuant to the requirements of RCFC Appendix A, counsel for the parties conducted the early meeting of counsel on October 22, 2007, by telephone conference call.

The following attorneys attended the meeting:

1. Counsel of Record for Plaintiff: Frank R. Jozwiak.

2. Other Counsel for Plaintiff: Kyme A.M. McGaw.

3. Counsel of Record for Defendant: James M. Upton

At the meeting, counsel for the parties discussed their positions on the items set forth in RCFC Appendix A and also on matters to be covered by the JPSR.

**A. Does The Court Have Jurisdiction Over The Action?**

**Plaintiff's Position:**

This Court has jurisdiction over this case under 28 U.S.C. § 1491 (the Tucker Act) and 28 U.S.C. § 1505 (the Indian Tucker Act).

Plaintiff seeks to litigate its claims in phases, for the purpose of manageability. Plaintiff proposes a Phase 1 that covers its trust fund mismanagement claims during the time period of FY 1972 to the present. The period of time from FY 1972 through FY 1992 was covered by reports on tribal trust fund accounts produced by the accounting firm of Arthur Andersen, LLP, under contract with the Bureau of Indian Affairs. Plaintiff does not waive any rights that it may have to prosecute additional claims, including claims which are based on breaches of duty that occurred before FY 1972. Plaintiff will seek to engage in complete discovery and resolve or litigate all Phase 1 claims before proceeding to the next phase.

**Defendant's Position:**

The claims raised by Plaintiff in this case suffer from several possible jurisdictional deficiencies that, when addressed by this Court, could (a) result in a dismissal of the Complaint and dispose of the case in the entirety, or (b) dispose or limit the scope of certain of the claims. As noted

above, Plaintiff's claims may be barred by application of the statute of limitations at 28 U.S.C.§ 2501. Further the Court may lack jurisdiction under the Tucker Act and Indian Tucker Act, 28 U.S.C. §§ 1491(a)(1), 1505, over those claims for which Plaintiff is unable to identify a substantive source of law, such as a statute, treaty, or regulation, that establishes a specific fiduciary money mandating duty or that was within the exclusive jurisdiction of the ICC (in other words, the claim accrued on or before August 13, 1946). Additionally, depending on Plaintiff's detailed specification of its claims, Defendant may raise the defense of claim preclusion. Before Defendant can determine which, if any, of Plaintiff's claims are time barred, lack a jurisdictional basis, or are precluded by *res judicata* and, based on that determination, file an appropriate dispositive motion, however, Defendant requires a detailed specification by Plaintiff of its claims, as well as the factual and legal bases thereof, in this case and, if necessary, limited discovery from Plaintiff regarding the factual bases of the claims that it asserts herein.

Defendant does not object to Plaintiff's proposal to litigate its trust fund mismanagement claims in phases.

**B. Should The Case Be Consolidated With Any Other Case And, If So, Why?**

The parties do not believe this case should be consolidated with any other case at this time.

**C. Should The Trial Of Liability And Damages Be Bifurcated, And If So, Why?**

**Plaintiff's Position:**

If the issue of liability cannot be resolved by dispositive motions(s) and trial becomes necessary on the issue of liability, Plaintiff agrees with Defendant that it would be appropriate to bifurcate the trial into liability and damages phases. Trial will likely be necessary on issues of monetary damages.

For purposes of manageability, however, Plaintiff seeks to divide this case into phases by periods of years, whereby each period proceeds through to mediation, trial, or settlement before beginning the next phase. As noted above, Phase 1 covers the period FY 1972 to the present.

**<u>Defendant's Position</u>:**

To the extent that the case is not disposed of in the entirety on jurisdictional grounds and that a trial in the case is necessary, Defendant believes that it would be appropriate to bifurcate the trial into liability and damages phases, because of the potential legal and factual complexity of the trust fund mismanagement issues and claims raised herein.

Defendant does not object to Plaintiff’s proposal to divide the litigation of this case into phases.

**D. Should Further Proceedings In The Case Be Deferred Pending Consideration Of Another Case Before This Court Or Any Other Tribunal And, If So, Why?**

The parties are unaware of another case before this Court or any other tribunal or any circumstance that would warrant deferral of further proceedings in this case.

**E. In Cases Other Than Tax Refund Actions, Will A Remand Or Suspension Be Sought And, If So, Why And For How Long?**

**<u>Plaintiff's Position</u>:**

Plaintiff envisions that a suspension may be necessary in order to conduct non ADR settlement negotiations.

**<u>Defendant's Position</u>:**

Defendant is presently unaware of any case or circumstance that would warrant a remand or a suspension in this case.

**F. Will Additional Parties Be Joined? If So, The Parties Shall Provide A Statement Describing Such Parties, Their Relationship To The Case, The Efforts To Effect**

**Joinder, And The Schedule Proposed To Effect Joinder.**

At this time, the parties do not anticipate the joinder of any additional party.

**G. Does Either Party Intend To File A Motion Pursuant To RCFC 12(B), 12(C), Or 56, And, If So, What Is The Schedule For The Intended Filing?**

**Plaintiff's Position:**

At the conclusion of Plaintiff's initial fact discovery and expert review regarding such discovery, Plaintiff would file a RCFC 56 motion on Phase 1 liability issues only. Plaintiff objects to Defendant's position that Plaintiff, in advance of completing discovery and expert review, provide Defendant with a "detailed statement of its claims." Without the benefit of discovery and expert review of discovery results, Plaintiff would be unable to provide Defendant with such detailed statement. Moreover, Plaintiff's early filing of such information would prejudice Plaintiff in this litigation.

Should the Court order the Plaintiff file a detailed statement, as requested by Defendant, Defendant's proposed procedure, with some modification, is acceptable to Plaintiff. See Defendant's Position below and Defendant's Position in Section H, below.

**Defendant's Position:**

As to the proposed Phase 1, Defendant contemplates raising jurisdictional defenses in a single dispositive motion pursuant to RCFC 12(b) or 56 later in this case. Before Defendant can seek dismissal or summary disposition of Plaintiff's claims, however, the Court should require Plaintiff to file a detailed statement of its claims in Phase 1, including specification of the particular rights-creating or duty-imposing sources of law underlying the claims, the precise breach(es) of those duties that allegedly occurred, a concise statement of the alleged operative facts constituting the asserted breach(es) of duty, and the alleged damages resulting from such alleged breach(es). After

Plaintiff has specified its claims, the Court should allow Defendant to engage in discovery, for 120 days, to determine the basis, if any, for this Court's subject matter jurisdiction over the specified claims. Ninety days after completion of this discovery, Defendant would raise its remaining jurisdictional defenses by way of RCFC 12(b) or 56 motion, if it deems that doing so would be appropriate.

In the event that the Court allows Plaintiff to delay or defer the filing of its detailed specification of claims until after Plaintiff has promulgated its expert report(s) or to supplement its detailed specification of claims after Plaintiff's promulgation of its expert report(s), the Court should extend, by a commensurate amount of time, (1) the period for Defendant to take discovery to determine the basis, if any, for the Court's subject matter jurisdiction over the specified claims, and (2) the period for Defendant to file any jurisdictional motions.

**H. What Are The Relevant Factual And Legal Issues?**

**<u>Plaintiff's Position</u>:**

The overarching legal issue is whether the United States breached its duties as trustee with regard to Plaintiff's trust funds, resources and assets. To date, Defendant has not provided the relevant documents needed for Plaintiff to determine Defendant's specific breaches of trust duties and damages therefrom. Depending upon the results of fact discovery and subsequent analysis of these documents by Plaintiff's experts, the legal issues would likely include, but not be limited to, whether the Defendant:

1. Failed to collect or timely collect amounts due and owing to the Tribe under leases, contracts, and similar documents;

2. Failed to collect the full amounts that were statutorily or contractually required;

3. Failed to promptly deposit funds following receipt of payment;

4. Failed to obtain investment yields in accordance with the law;

5. Kept unreasonably large balances in a cash account;

6. Failed to deposit collected monies into the Tribe's (interest-bearing) trust accounts;

7. Incurred a disbursement lag time and lost interest due to the posting of the withdrawal of the funds from the Tribe's trust accounts before checks had cleared the U.S. Treasury Department account on which it is drawn;

8. Failed to assess penalties for late payment;

9. Failed to increase commercial lease rates upon mandatory period review;

10. Failed to post corrections for known errors in the Tribe's trust accounts;

11. Failed to prevent negative interest from being charged against the Tribe's trust accounts;

12. Failed to prevent unauthorized payments for disbursement from the Tribe's trust accounts;

13. Failed to properly exercise its fiduciary duty in the administration and management of tribal non monetary trust resources and assets;

14. Made unsupported or otherwise improper disbursements; and

15. Must perform an accounting of the accounts held in trust for the Plaintiff, and provide the contents of such accounting.

The factual issues involve calculating the amount of damages that flow from the Defendant's breaches of trust.

**Defendant's Position:**

It is presently premature for Defendant to identify the factual and legal issues (including those for Phase 1) that this Court may have to address at trial on liability or damages, because the precise contours of those issues depend on jurisdictional rulings that Defendant plans to request from the Court. As to the Court's jurisdiction, Defendant sets forth the following relevant factual and legal issues in this case, including Phase 1.

1. Whether Plaintiff's claims are barred by the Statute of Limitations, 28 U.S.C. § 2501.

a. Whether Plaintiff's claims fall with Interior Appropriations Act language, which provides, in relevant part, that a Tribe's claims related to loss or mismanagement of its trust funds shall not begin to accrue until the United States Department of the Interior has provided an accounting from which the Tribe can determine its losses (see Pub. L. No. 108 447, 118 Stat. 2809), as construed by the Court of Appeals for the Federal Circuit in *Shoshone Indian Tribe v. United States*, 364 F.3d 1339, 1350 51 (Fed. Cir. 2004); and

b. Whether Plaintiff's claims accrued more than six years prior to the filing of this case.

2. Whether the Court has jurisdiction over Plaintiff's claims under the Tucker Act or the Indian Tucker Act, 28 U.S.C. §§ 1491(a)(1), 1505.

a. Whether Plaintiff's claims are based on substantive sources of law, such as a statute, treaty, or regulation that establish specific fiduciary or other duties;

b. To the extent that Plaintiff's claims are based on specific duties established in substantive sources of law, whether a breach of those duties would mandate the payment of compensation; and

c. Whether Plaintiff has sufficiently alleged that Defendant has failed to perform

any specific money mandating duties; and

d. Whether Plaintiff's claims were within the exclusive jurisdiction of the ICC.

3. Whether Plaintiff's claims are barred by the doctrine of *res judicata* or claim preclusion.

**I. What Is The Likelihood Of Settlement? Is Alternative Dispute Resolution Contemplated?**

**Plaintiff's Position:**

Plaintiff agrees with Defendant and remains open to the possibility of settlement. Plaintiff would seek cooperation with Defendant in meaningful settlement discussions, and would seek the aid of the Court in facilitating settlement if necessary.

**Defendant's Position:**

The parties began exploring the possibility of settlement discussions shortly after the filing of this case. For that reason, the parties jointly requested (Dkt. 5) and received from the Court a temporary stay of litigation in this case (Dkt. 6). In July, 2007, Plaintiff determined that it would like to proceed with the litigation of this case. The Court ordered the parties to file a Joint Status Report (JSR) by July 27, 2007. Dkt. 6. In this JSR, the parties stated, among other things, their agreement to have Defendant file the Answer by September 28, 2007. Dkt. 9.

Notwithstanding the fact that the parties have not explored successfully settlement discussion thus far, Defendant believes that there remains a potential for settlement, alternative dispute resolution (ADR), or other informal resolution of Plaintiff's claims without the need for protracted litigation. Thus, Defendant remains open to the possibility for further undertaking that potential to fruition.

Also, Defendant has been and continues to be willing to engage in informal measures, such

as the production of relevant or potentially relevant documents and data about Plaintiff's trust funds and nonmonetary trust assets, outside of the context of formal discovery or litigation, so as to inform or otherwise enable the parties to resume settlement discussions or proceed with ADR or informal resolution process, if they should so determine.

**J. Do The Parties Anticipate Proceeding To Trial? Does Either Party, Or Do The Parties Jointly, Request Expedited Trial Scheduling And, If So, Why?**

**Plaintiff's Position:**

If the parties cannot settle Phase 1 claims as discussed above in § I, Plaintiff anticipates filing summary judgment motion(s) on liability and proceeding to trial on issues of monetary damages. See § C above. Plaintiff does not request expedited trial scheduling and agrees with Defendant that trial cannot likely be accomplished in an expedited manner due to the number and complexity of factual and legal issues that will need to be resolved.

**Defendant's Position:**

At this point, it is unclear to Defendant whether Phase 1 or any other phases of this case will proceed to trial. As stated by Defendant in response to Questions A, G, and H above, it is possible that this case may be resolved in whole or in part by dispositive motion. Moreover, as stated by Defendant in its response to Question I above, Defendant remains willing to engage in settlement discussions, ADR, or other means of informally resolving Plaintiff's issues and claims without the need for extended litigation.

In the event that the case does proceed to trial, however, Defendant generally does not believe that such a trial can be accomplished in an expedited manner.

In any event, in the interest of judicial efficiency, economy, and conservation of resources, the Court should defer any scheduling of pre trial proceedings or of the trial itself, until after Plaintiff

has provided its detailed specification of claims, the parties have briefed the jurisdictional issues related to the specific claims, and the Court has ruled on those jurisdictional issues. As mentioned above, the jurisdictional issues include such threshold ones as whether Plaintiff has sufficiently shown the existence of money mandating duties and whether Plaintiff's claims are barred by the statute of limitations.

**K. Are There Special Issues Regarding Electronic Case Management Needs?**

The parties do not foresee any special issues regarding electronic case management.

**L. Is There Other Information Of Which The Court Should Be Aware At This Time?**

**<u>Plaintiff's Position</u>:**

**1. Protective Order**. Plaintiff does not object to a protective order, as long as such order is consistent with Defendant's duties as trustee and is not unduly burdensome on Plaintiff, such as, by interfering with Plaintiff's ability to consult with other tribes' attorneys and experts on non confidential general issues relating to the tribal trust fund cases; by burdening Plaintiff when preparing and filing pleadings and other documents with the Court; or by prejudicing Plaintiff by, for example, having to prematurely share litigation strategies with Defendant. Plaintiff understands, however, Defendant's need to keep certain material and information confidential in accordance with federal law. The parties are currently in the process of finalizing a mutually acceptable protective order, and anticipate that it will be completed and presented to the Court within 30 days following the filing of this JPSR.

**2. Document Preservation Order**. By Order dated October 25, 2007, the Court issued its order approving the parties' agreement to a Protective Order.

**<u>Defendant's Position</u>:**

**1. Confidentiality Protective Order**

Defendant has informed Plaintiff that there needs to be an order in this case that protects the confidentiality of certain documents, data, and other materials that Defendant intends to produce to Plaintiff, in response to Plaintiff's formal and informal requests. The reason for this is that some of the documents, data, and other materials sought by Plaintiff contain information that are subject to protection from disclosure (1) pursuant—but not limited—to the Privacy Act, 5 U.S.C. § 552a, including information related to Individual Indian Money (IIM) accounts; Indian Minerals Development Act (IMDA), 25 U.S.C. § 2103(c); Trade Secrets Act, 18 U.S.C. § 1905; Archeological Resources Protection Act, 16 U.S.C. § 470hh(a); Surface Mining Control and Reclamation Act, 30 U.S.C. § 1201; National Historic Preservation Act Amendments of 1992, 16 U.S.C. § 470w-3; and the Mineral Leasing Act, 30 U.S.C. § 181 *et seq.*; (2) as confidential business information; or (3) because it relates to Indian Tribes and/or Indian individuals not parties to this litigation.

Plaintiff has stated that it is generally not opposed to the entry of a confidentiality protective order. Accordingly, the parties have been negotiating about the terms and conditions of such an order. Thus far, however, the parties have not been able to resolve their disagreements and differences in positions on issues such as those identified by Plaintiff above.

Plaintiff has misunderstood and mischaracterized the nature of the disagreements and differences in positions between the parties. Contrary to Plaintiff's allegations above, Defendant does not intend to interfere "with Plaintiff's ability to consult with" the counsel for other Tribes that are also involved in Tribal trust litigation against Defendant, about "non[-]confidential general issues relating to the [T]ribal trust fund cases." Nor does Defendant seek to burden Plaintiff in an undue manner with respect to the preparation and filing of pleadings and other documents in this case or to

force Plaintiff to "prematurely share litigation strategies with Defendant."

In the negotiations about the terms and conditions of the proposed confidentiality protective order that have occurred between the parties to date, Plaintiff has demanded, among other things, the right to share, in an open and unrestricted manner, confidential documents, data, and other materials produced by Defendant to Plaintiff in this case, with other people, including counsel for other Tribes in other cases who have little or no connection to Plaintiff or this case. Also, Plaintiff has demanded the right to handle and file confidential documents, data, and other materials in this case, that is not in accordance with the requirements of the law, rules, or regulations. Defendant does not and cannot agree with Plaintiff's demands, which are completely antithetical to the fundamental need for protection of confidentiality prescribed by applicable statutes, rules, and regulations.

In at least one other Tribal trust case, the Court has rejected a position similar to the one advanced by Plaintiff herein. See, e.g., Ak-Chin Indian Community v. United States, No. 06cv00932-ECH, Order Granting Motion for Protective Order, Dkt. 19; see also Dkts. 16-18, 20.

**2. Document Preservation Order**

As Plaintiff correctly notes, this Court issued an Order for the retention or preservation of records or "documents, data, and tangible things," on October 25, 2007. Defendant believes that, under that record retention order (RRO), Plaintiff has the obligation to preserve Tribal documents, data, and tangible things" that are relevant to or that can lead to the discovery of admissible evidence to its trust mismanagement claims herein. This obligation stems, in part, from Plaintiff having a "Section 638" contract with the Bureau of Indian Affairs (BIA) of the United States Department of the Interior to manage certain BIA programs relating to Plaintiff. Defendant intends to pursue the discovery of those documents in the course of litigation of this case.

**3. Other items**

a. Defendant is handling a total of 102 tribal trust accounting and trust mismanagement cases (including this one) that have been brought in this Court and in the United States District Courts. There are currently about 56 cases (including this one) in this Court; nine in various United States District Courts in Oklahoma; and 37 cases in the United States District Court for the District of Columbia.

b. Defendant has filed a motion for remand in the 37 Tribal trust accounting and trust mismanagement cases that have been filed in the United States District Court for the District of Columbia, because Interior has decided to prepare and present a historical accounting plan to address the claims of Tribes (including Plaintiff) for accountings of Tribal trust funds and/or non monetary trust assets or resources, as required by law. Upon completion and presentation of this historical accounting plan (which addresses accountings of all Tribes, including the Plaintiff), Interior plans to present accountings to the individual Tribes, including Plaintiff, to the extent required. This historical accounting plan and the individual Tribal accountings, in particular, the one for Plaintiff, are likely to have an effect on Plaintiff's trust accounting and trust mismanagement claims herein. Defendants can provide periodic reports, as appropriate, to the Court and Plaintiff herein about the status of Interior's preparation and presentation of its historical accounting plan and the individual accounting for Plaintiff, if the Court deems such periodic reports to be helpful.

**M. Proposed Discovery Plan**

**Plaintiff's Position:**

Plaintiff agrees with Defendant's general approach to phased discovery. Other aspects of discovery remain in dispute. Specifically, Plaintiff disagrees with Defendant's position in § 1(a) and (c) below.

**1. Generally:**

a. When disputes arise that relate to the Discovery Plan, the parties shall attempt to informally resolve the agreement within 15 calendar days, and may grant an extension(s). If the parties cannot resolve the agreement within 15 days and any mutually agreed extension(s), then the aggrieved party may ask the Court for a motion to compel and any other relief.

b. The parties may not exceed ten depositions per side without mutual agreement of the parties or leave of Court upon good cause shown.

c. The parties shall not depose any one deponent for more than one day and for over six hours on that day, without prior agreement of the parties or leave of Court upon good cause shown.

d. The parties shall, whenever possible, consolidate depositions to avoid unnecessary travel; shall conduct telephonic or video depositions; and/or shall conduct informal document exchange.

e. The parties may not exceed 45 interrogatories, including subparts, without prior agreement of the parties or leave of Court upon good cause shown.

f. The United States will, whenever possible, provide documents in electronic OCR format that may be searched electronically.

g. At the time that Defendant produces documents or promptly upon Plaintiff's request, Defendant, as Plaintiff's trustee, shall provide information that enables Plaintiff, its consultants, and/or experts to comprehend codes, procedures, terms of art, and other information in the documents that is unclear to a layperson. Plaintiff shall make every effort not to burden Defendant with requests.

h. Upon request by the Plaintiff, Defendant, as Plaintiff's trustee, , shall from time to time, make available knowledgeable federal employees or contractors to provide, orally and/or in writing, information that is relevant to the case, including but not limited to information that explains how Defendant has historically collected, managed, and disbursed tribal trust funds. Plaintiff shall make every effort not to burden Defendant with requests.

i. Documents that are relevant or potentially relevant to Plaintiff's issues and claims are stored in several facilities scattered around the country, including federal records repositories. Those documents may be found in boxes of retired federal records, as well as in active government files. Defendant shall comply with RCFC 34 and all other applicable Rules in producing and identifying the individual item or category of documents sought by Plaintiff. Plaintiff asserts that BISS reports and finding aids are insufficient to comply with the Court's discovery rules, and would seek resolution of that issue by the Court if Defendant disagrees.

j. As a trustee, the United States has "a duty to furnish the beneficiary on demand all information regarding the trust and its execution which may be useful to the beneficiary in protecting its rights, and to give the beneficiary facts which the trustee knows or ought to know would be important to the beneficiary." *White Mountain Apache Tribe of Ariz. v. United States*, 26 Cl. Ct. 446, 448 (1992) (citing G.T. Bogert, Trusts § 141, at 494 (6th ed. 1987)); accord *Clifford v. United States*, 136 F.3d 144, 152 (D.C. Cir. 1998) (citing the Restatement (second) of Trusts § 173 (1957)) (noting that a trustee must provide the beneficiary complete and accurate information regarding the trust "to ensure that the beneficiary receives any information necessary to protect his rights under the trust"). The presumptive limits on formal discovery imposed by the RCFC should therefore not apply to this litigation. Plaintiff anticipates that the scope and nature of its claims, and

the fact that almost all of the factual information necessary to support those claims is in the possession of the United States as trustee, may make additional interrogatories, depositions, and other forms of both formal and informal discovery necessary.

**2. <u>Stages of Discovery for Phase 1 Claims</u>:**

**a. Pending Discovery**. Plaintiff served its initial informal discovery on May 2, 2007, and supplemental informal discovery was served on May 18, 2007. Plaintiff began formal discovery by serving its first request for production of documents on August 27, 2007. The formal and informal Requests For Production (RFP) of documents each contained 31 categories of requests. RCFC 34(b) provides that the party upon whom the request is served shall serve a written response within 30 days after the service of the request.

On August 2, 2007, Defendant's attorney of record sent to Plaintiff's attorney of record a letter in response to Plaintiff's initial discovery. A copy of that letter is attached as Attachment 1. Plaintiff disputes many, if not most, of Defendant's arguments regarding document production stated in Defendant's letter. At this time, attorneys of record for Plaintiff and Defendant will seek to resolve the parties' differences. If this cannot be accomplished, Plaintiff will seek assistance from the Court by motion or through informal discussion with the Court.

On August 2, 2007, Plaintiff received 12 CD-ROMs from Defendant in response to its informal discovery requests. The CD-ROMs were responsive, in part, to Plaintiff's RFPs 2, 14, 15, 16, 17, 19, 20, 21, 22, and 24. The CD ROMs contained several thousand files in tagged image file format (TIFF), where each file is an image of one scanned page. Plaintiff had been unable to review these documents using the document management software used by both Defendant and Plaintiff (Concordance). Initially there appeared to be a problem with the way in which the images were

coded or uploaded onto the CD-ROMs, so that the individual images did not appear to be "linked" to their corresponding document. Thus, Plaintiff essentially had several thousand single-page images that were not easily associated with a particular document. This would have made it extraordinarily burdensome for Plaintiff to make use of these documents. It now appears that the parties' technical support staff have resolved the apparent problem and the documents may now be reviewed, but the issue did cause a delay in Plaintiff's review of these documents. It has been more than six months since the Plaintiff's initial informal Request for Production of Documents, and the Plaintiff has yet to receive a usable response to all but a few of its RFPs.

In addition, the documents provided on the CD-ROMs were separated into several databases, which makes the Plaintiff's review more difficult. Plaintiff believes that the documents could be better managed by both parties if they were in a single database.

The Plaintiff is awaiting the government's response to the other RFPs. The government has informed Plaintiff that the government cannot provide a response, or can only provide a limited response, to RFPs 1, 6, 8, 9, 10, 11, 12, 13, 17, 18, 21, 25, 30, and 31 until the parties have agreed to a joint stipulation of confidentiality and the Court issues a protective order. The government has provided some response to RFPs 2, 3, 5, 14, 15, 16, 17, 19, 20, 21, 22, and 24, but it is currently unclear whether any of those responses are complete. The government has recommended that the parties confer regarding RFPs 4, 7, 23, 26, 27, 28, and 29.

b. Discovery in this case should continue in three distinct phases.

c. The first phase would consist of the factual discovery, including pending discovery, that Plaintiff needs to delineate and define its Phase 1 claims.

The initial disclosures required by RCFC 26(a)(1) should be made 14 days after this report

is filed. The parties shall have 365 days from November 16, 2007, to complete this stage of factual discovery. The parties, however, shall make all efforts to complete this discovery sooner.

d. Within 90 days after completion of Stage 1 discovery, Plaintiff shall provide Defendant with Plaintiff's expert opinion(s), a detailed specification of Plaintiff's claims, and the factual and legal basis thereof, and/or dispositive motion(s) on the issue of liability. Stage 2 of discovery would begin immediately following service on Defendant on one or more of these documents. Stage 2 of discovery would last for 120 days from such service. This second stage would be limited to the fact discovery necessary for Defendant to determine what, if any, jurisdictional challenges it may bring as to Plaintiff's Phase 1 claims. Within 60 days of the conclusion of this second stage of discovery, Defendant would file any dispositive motions it may have raising jurisdiction raising jurisdictional defenses. Plaintiff reserves its right to serve additional, limited discovery requests on Defendant during Phase 2 of discovery if Defendant's discovery requests raise issues related to Plaintiff's prosecution of its Phase 1 claims. If the Court finds a jurisdictional basis for proceeding with this litigation, the parties would confer about the scheduling of the third or final phase of discovery, and the parties would propose a schedule for that discovery to the Court. This third phase shall be devoted predominantly to expert discovery and preparation for trial, but the parties would also conduct any remaining necessary fact discovery, including fact or RCFC 30(b)(6) depositions, based on the specific claims that have survived Defendant's jurisdictional challenges. Defendant will submit its expert witness disclosures 180 days after Plaintiff's expert disclosures. The parties will submit expert rebuttal reports within 60 days after their respective receipt of expert witness reports.

**<u>Defendant's Position</u>:**

**1. <u>Generally</u>:**

The pending discovery should be encompassed by the "first phase" of discovery. As described above, discovery in the proposed Phase 1 of this case (as in other phases) should proceed in three distinct phases and should be conducted in accordance with the RCFC. Defendant takes the position that it has already made its " initial disclosures" to plaintiff by virtue of the documents and data provided on August 2 and 10, 2007, and the documents transmitted to plaintiff on October 30, 2007.

The first discovery phase would consist of the factual discovery that Plaintiff needs to delineate and define the claims that it shall set forth in its statement of claims. Such discovery should be limited to document productions, interrogatories, and requests for admission. As counsel for the parties have discussed, documents relevant or potentially relevant to Plaintiff's issues and claims herein are located at multiple locations, including federal records repositories, around the country. Those documents may be found in hundreds, possibly thousands, of boxes of retired federal records, as well as active government documents. In order for Defendant to respond to Plaintiff's discovery requests, the parties would have to undertake the following process:

a. The parties would have to identify the boxes that may contain responsive documents;

b. The Solicitor's Office of the Interior Department would have to conduct a pre inspection privilege review of those identified boxes;

c. Plaintiff's counsel would have to inspect the boxes and identify those documents it wishes to have produced; and

d. Defendant would have to image, code, and conduct a post inspection

confidentiality and privilege review, before producing the images of the requested documents to Plaintiff, pursuant to a confidentiality protective order negotiated by the parties and approved and entered by this Court.

Defendant believes that, in conducting discovery in this case, the parties should follow the rules for such discovery, as set forth in the RCFCs, including but not limited to the prescribed limits on the number, manner, and mode of discovery requests. Defendants propose that the parties confer about the need, if any, to waive the rules or exceed the limits imposed thereunder, and that, in the event that they cannot resolve their disagreements among themselves, they seek guidance or resolution by the Court, if appropriate or necessary.

Defendant disagrees with those of Plaintiff's discovery-related proposals that do not conform with Defendant's statement above. See, e.g., Plaintiff's position in subparagraph 1.h of Section M above. Defendant opposes, in particular, Plaintiff's position that it should be able to request informal conferences with or interviews of Defendant's employees or staffers. In Defendant's view, Plaintiff's position is inconsistent with its election of formal litigation and discovery. Having made that election, Plaintiff should not be permitted now to mix or conflate formal and informal discovery processes and procedures. If Plaintiff needs additional information after reviewing Defendant's discovery responses, Plaintiff should follow the rules and propound further discovery requests. Contrary to Plaintiff's wholly unsupported assertion (in subparagraphs 1.g and 1.h of Section M above), Defendant's role as trustee does not impose "special" discovery obligations on Defendant that are above and beyond the requirements of the RCFCs. In particular, it does not confer the alleged

obligation to provide "informal" discovery to Plaintiff.[1]

Defendant does not believe that this JPSR is the proper forum or context in which to make legal arguments about a party's discovery obligations. Defendant points out, however, that Plaintiff has not cited and, indeed, can cite to no statutory, regulatory, or other legal authority for its assertions. In particular, the RCFCs do not treat parties that serve as trustees any differently than other parties, and they do not impose any special requirements (especially with regard to "informal" discovery) on such parties. To the extent that the parties in this case are engaged in formal discovery, the parties—including Plaintiff—should be required to undertake formal discovery, as permitted by the RCFCs, for any information that they seek from the opposing party.

**2. <u>Stages of discovery for Phase 1 claims</u>:**

Based on Defendant's experience in other Tribal trust accounting and trust mismanagement cases, depending on the documents requested by Plaintiff, it likely will take one year to complete this production process, particularly if Plaintiff insists on such measures as a document confidentiality and identification review before production to Plaintiff. Until Plaintiff propounds document or other discovery requests, in addition to its already pending discovery requests, Defendant is unable to estimate accurately the amount of time that the Court should allow to complete discovery for this first phase of discovery. For purposes of a proposed scheduling order, however, Defendant agrees with Plaintiff that 365 days is the appropriate amount of time for completion of the initial phase of discovery.

The second stage of discovery would begin after Plaintiff files a specific statement of its

---

[1] Defendant would take a different view if the parties were in settlement discussions or otherwise engaged in ADR or an informal effort to resolve Plaintiff’s claims without litigation. In that situation, it would be appropriate for the parties to consider the option of informal discovery.

claims. This stage would be limited to the fact discovery required for Defendant's jurisdictional challenges (e.g., whether Plaintiff's claims accrued more than six years prior to the filing of this litigation). Although it is difficult to predict the extent of this discovery at this time, i.e., before Plaintiff has provided its detailed specification of its claims, Defendant agrees with Plaintiff that, for purposes of preliminary planning, the second phase proceed for 120 days. Defendant also agrees that within 90 days of the conclusion of this discovery, Defendant would file its dispositive motions raising its jurisdictional defenses.

Defendant also agrees with Plaintiff that, once the Court has resolved the jurisdictional issues and assuming that the Court finds a jurisdictional basis for proceeding with this litigation, the parties will confer about the scheduling of the third or final stage of discovery and propose a schedule for that discovery to the Court. During this phase, the parties would conduct any remaining fact discovery, including fact or RCFC 30(b)(6) depositions, based on the specific claims (if any) that have survived Defendant's jurisdictional challenges. In addition, the parties would conduct expert witness discovery and otherwise prepare the case for trial. In Defendant's past experience with other Tribal trust accounting and trust mismanagement cases involving similar complex breach of trust claims, a Plaintiff's full articulation of its claims, as well as the legal and factual bases for those claims, typically does not occur until after Plaintiff has disclosed its expert witnesses' respective reports. Accordingly, as soon as Defendant obtains the reports of Plaintiff's expert witnesses, Defendant will likely need to conduct further research to identify and develop evidence from voluminous retired records, not only to rebut Plaintiff's claims, but also to support Defendant's own expert analyses. For this reason, Defendant opposes a simultaneous exchange of expert witness reports.

Without sufficient time to conduct this additional research, Defendant would be prejudiced in its ability to prepare and present an adequate defense at trial. Therefore, to foreclose this kind of prejudice, Defendant proposes that its expert witness disclosures be required no less than 180 days after Plaintiff's expert disclosures.

Respectfully submitted this 16th day of November, 2007,

MORISSET, SCHLOSSER, JOZWIAK &
MCGAW

*s/ Frank R. Jozwiak, by s/ James M. Upton pursuant to written authorization provided on November 16, 2007*
FRANK R. JOZWIAK
f.jozwiak@msaj.com
Attorney of Record for Plaintiff
Morisset, Schlosser, Jozwiak & McGaw
1115 Norton Building
801 Second Avenue
Seattle, Washington 98104-1509
Tel: 206-386-5200
Fax: 206-386-7322

KYME A.M. MCGAW
k.mcgaw@msaj.com
Of Counsel for Plaintiff
Morisset, Schlosser, Jozwiak & McGaw
1115 Norton Building
801 Second Avenue
Seattle, Washington 98104-1509
Tel: 206-386-5200
Fax: 206-386-7322

RONALD J. TENPAS
Acting Assistant Attorney General

*s/ James M. Upton*

JAMES M. UPTON
james.upton@usdoj.gov
Attorney of Record for Defendant
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
P.O. Box 663
Washington, D.C. 20044-0663
Tel: 202-305-0482
Fax: 202-353-2021

ANTHONY P. HOANG
Anthony.Hoang@usdoj.gov
United States Department of Justice
Environment and Natural Resources Division
P.O. Box 663
Washington, D.C. 20044-0663
Tel: 202-305-0241
Fax: 202-353-2021

OF COUNSEL:

THOMAS BARTMAN
Office of the Solicitor
United States Department of the Interior
Washington, D.C. 20240

TERESA DAWSON
Office of the Chief Counsel
Financial Management Service
United States Department of the Treasury
Washington, D.C. 20270