# DECLARATION OF

# RICHARD P. FIELITZ, JR.

# DECEMBER 19, 2007

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| **Quechan Tribe of the Fort Yuma Indian Reservation** | ) | Case No. 06-888L |
| Plaintiff | ) | |
| v. | ) | **DECLARATION OF RICHARD P. FIELITZ, JR.** |
| **UNITED STATES OF AMERICA** | ) | |
| Defendant | ) | |

I, Richard P. Fielitz, Jr., pursuant to 28 U.S.C. § 1746, do hereby declare and state:

1. I am the Chief of Staff for the Office of the Special Trustee for American Indians ("OST") in the Department of the Interior. I have held this position since October 28, 2007, and I have been employed by OST since May 2004. My duties include oversight responsibilities for various OST functions, including litigation support. As explained in more detail below, I am also the Records Retention Orders (RRO) Compliance Coordinator for OST.

2. In March 2007, OST received a Memorandum dated March 12, 2007, signed by Larry Jensen, Deputy Solicitor, which was addressed to all Interior offices and bureaus. It directed those offices and bureaus to, among other things, preserve information potentially relevant to *any* tribal trust litigation, including but not limited to this case. The Memorandum identified common issues in tribal trust cases and directed the continued preservation of electronic and paper records potentially relevant to these cases, including the Quechan litigation. A copy of the Jensen Memorandum then was circulated to Records Liaisons for OST, including its Office of Trust Records ("OTR"). Margaret Treadway, my predecessor as Chief of Staff, sent an email to OST

Senior Managers directing them to ensure each employee read the Memorandum. On April 4, 2007, OTR certified to the Office of the Chief Information Officer that all OTR employees had read the Memorandum. The Memorandum also was placed on OST's internal Trust Portal for ready access by OST employees. The Jensen Memorandum was discussed again in a regularly scheduled Senior Managers Meeting on December 4, 2007, and copies of the Memorandum were again handed out and compliance issues were discussed.

3. The Jensen Memorandum further reiterated Interior's preexisting policy requiring the indefinite retention of all categories of Indian fiduciary trust records, regardless of the existence of any pending litigation. That policy is detailed in the record retention schedules contained in 16 Bureau of Indian Affairs (BIA) Manual, expressly applicable to records maintained by BIA and OST. The Indian Affairs Records Management Manual specifically states that BIA and OST records retention policy for all records is permanent for all records, including any identified as temporary. In other words, no records may be destroyed. OST further supports and carries out Interior's records retention policy by, among other measures, extensive records training for Interior employees that is conducted by OTR and by the policy of shipping all inactive records from various Interior facilities to the American Indian Records Repository ("AIRR"), an archival-quality facility, when the period for these records to be retained onsite has expired.

4. OST first received a copy of the Quechan RRO, along with an explanatory memorandum, from Thomas Bartman of the Office of the Solicitor, by fax on October 30, 2007. OST has begun drafting an internal, OST-wide policy on records retention orders and on compliance with such orders, and is drafting a Microsoft Project plan for further compliance measures to be taken throughout OST (including but not limited to the Office of Trust Records).

OST expects to coordinate with the Solicitor's Office as it works to finalize and implement such additional compliance measures. Meanwhile, I have been informed that Mr. Rodney McVey, OST Fiduciary Trust Officer for the Colorado River Agency, which maintains records of Quechan tribal trust accounts, has distributed the Court of Federal Claims Protective Order to all Colorado River Agency employees who might come into contact with the tribal accounts and has discussed with and explained to them the terms of the Order.

5. On or about November 29, 2007, OST received a copy of a November 20, 2007, Memorandum from Paul Smyth, Counselor to the Solicitor, addressed to the Office of the Secretary and the heads of the various offices and bureaus within Interior. See Attachment (November 20 Memorandum). As directed by that November 20 Memorandum, and as stated in paragraph 1 above, I have been assigned to be the RRO Compliance Coordinator for OST.

6. On December 6, 2007, I participated in a teleconference the Solicitor's Office held with all of the designated RRO Compliance Coordinators for various Interior offices and bureaus, as part of the process of developing additional measures to ensure Interior's compliance with all of the Court of Federal Claims RROs. Written guidance to memorialize those additional measures was issued by the Solicitor's Office on December 7, 2007, which I received. As designated RRO Compliance Coordinator for OST, I understand that upon receipt of that guidance I then will be responsible to ensure that those measures are implemented throughout OST.

RICHARD P. FIELITZ, JR.

Executed this 19th day of December, 2007.

# DECLARATION OF

# RICHARD P. FIELITZ, JR.

# EXHIBIT A

# United States Department of the Interior

OFFICE OF THE SOLICITOR
Washington, D.C. 20240

IN REPLY REFER TO:

NOV 2 0 2007

**MEMORANDUM**

**To:** **Office of the Secretary**
**Office of the Solicitor**
**Office of the Special Trustee**
**Office of Historical Trust Accounting**
**Office of the Inspector General**
**Office of Assistant Secretary - Indian Affairs**
**Bureau of Indian Affairs**
**Office of Assistant Secretary - Policy, Management, and Budget**
**Office of Hearings and Appeals**
**Office of Assistant Secretary - Land and Minerals**
**Minerals Management Service**
**Office of Surface Mining**
**Bureau of Land Management**
**Office of Assistant Secretary - Fish, Wildlife, and Parks**
**Fish and Wildlife Service**
**Office of Assistant Secretary - Water and Science**
**Bureau of Reclamation**
**U.S. Geological Survey**

**From:** Paul B. Smyth, Counselor to the Solicitor

**Subject:** Compliance with Records Retention Orders in Tribal Trust Cases: *Swinomish Indian Tribal Community v. United States*; *Navajo Nation v. United States; Round Valley Indian Tribes v. United States; Pawnee Nation of Oklahoma v. United States; Kaw Nation v. United States; Quechan v. United States*

In the last few months, two judges in the Court of Federal Claims, Judge Allegra and Judge Braden, have entered Records Retention Orders ("RROs") in the above cases. Copies of these, as well as of two earlier (2004) RROs, are attached for your reference.[1]

Although the RROs differ in some specific provisions, each of them imposes a broad duty on all U.S. Government employees, contractors, and volunteers to preserve all "documents, data, and tangible things" in their possession, custody or control containing information that is relevant to, or may reasonably lead to the discovery of information relevant to, the subject matter involved in the pending litigation ("Relevant Information"). Each RRO also requires that mechanisms for ensuring compliance with the RRO be established, and that the Court be advised of the specific

[1] The 2007 RROs are in addition to those entered in 2004 by Judge Allegra in *Jicarilla Apache Tribe v. United States* and *Pueblo of Laguna v. United States*, which still remain in effect. To date, no other judges have entered RROs in any other tribal trust cases.

features of those mechanisms. Please note that some of the RROs expressly provide for individual sanctions for non-compliance. In addition (and as would be the case even if these RROs had not been entered in these cases), Interior could be subject to adverse findings on the merits of the underlying litigation if the Court determines that any Relevant Information has been destroyed or lost.

The staff attorneys assigned to these cases in the Indian Trust Litigation Office already have contacted the Bureau of Indian Affairs and/or the Office of the Special Trustee, by phone and/or mail, to inform them of the requirements of their respective RROs. These attorneys also have asked BIA and/or OST to assist them in identifying other U.S. Government repositories of Relevant Information for any of these tribes, with particular focus on any repositories that may exist within the Department of the Interior. Based on the information received to date, it appears likely that each of your bureaus and offices may have Relevant Information related to at least one of the tribes listed above.

**Conclusion:**

As a first step in documenting Department-wide efforts to put in place compliance measures that will enable all bureaus and offices to document their respective ongoing efforts to ensure that Relevant Information is appropriately safeguarded, please provide me with the name and contact information of the person or persons you wish to designate as the RRO Compliance Coordinator for your bureau or office. As some of these RROs will require compliance filings to be made with the Court as early as Friday, November 30, 2007, I ask that you provide me with this information **no later than the close of business on Thursday, November 29, 2007.**

Please direct any questions about this memorandum to Elisabeth Brandon, ITLO Tribal Trust Team Leader (at 202-208-4218).

Thank you very much for your prompt attention to this matter.

Sincerely,

Paul B. Smyth
Counselor to the Solicitor

Attachments

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| SWINOMISH INDIAN TRIBAL COMMUNITY, a federally recognized Indian tribe,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | Case No. 1:06-cv-00899L<br>Judge Francis M. Allegra |

PARTIES' JOINT STIPULATION REGARDING PRESERVATION OF DOCUMENTS, DATA AND TANGIBLE THINGS

WHEREAS, Plaintiff Swinomish Indian Tribal Community ("Plaintiff") has filed this case, alleging that Defendant United States of America ("Defendant") breached its trust duties regarding management of Plaintiff's trust funds and failed to provide a proper accounting of such funds, and requesting various forms of relief, including monetary damages; and

WHEREAS, a preliminary status conference in this case was held on July 6, 2007, during which the Court ordered the parties to confer and to prepare and file a joint status report regarding whether and how they wish to proceed with the entry of a document preservation order in this case; and

WHEREAS, counsel for the parties have conferred regarding this issue on several occasions; and

WHEREAS, the parties agree that maintaining the integrity of all documents, data, and tangible things containing information reasonably anticipated to be subject to discovery in this action is essential to resolving the issues in this case and to satisfying

the parties', and their agencies', employees' and agents', legal obligations with respect to the preservation of potentially relevant evidence;

NOW, THEREFORE, the parties agree as follows:

1. **Obligation to Preserve Relevant Documents.** During the pendency of this litigation (including informal settlement discussions, ADR, and/or any appeals herein), the parties, their agencies, their employees and agents shall take reasonable steps to preserve those documents, data, or tangible things in their possession, custody, or control, containing information that is relevant to, or may reasonably lead to the discovery of information that is relevant to, the subject matter of the pending litigation ("Swinomish documents").

2. **Compliance.** Defendant, in consultation with Plaintiff, shall establish a mechanism concerning on-going compliance with this Joint Stipulation, such as periodic reminders of record retention obligations to be sent to Swinomish document repositories (i.e. BIA Puget Sound Agency, Northwest Regional Office and the Office of Trust Records), and, on or before September 17, 2007, shall confirm in writing, again in consultation with Plaintiff, the parties' understanding of that mechanism. Counsel shall immediately notify opposing counsel if, at any time, they become aware of a violation of Paragraph 1 of this Joint Stipulation (i.e. the destruction or loss of documents, data, and/or tangible things).

3. **Definitions.** For purposes of this Joint Stipulation:

   a. "Documents, data, and tangible things" is to be interpreted broadly to include, without limitation, writings; records; files; contracts; leases;

correspondence; reports; memoranda; calendars; diaries; minutes; electronic messages; voicemail; E-mail; telephone message records or logs; computer and network activity logs; hard drives; backup data; removable computer storage media such as tapes, disks, and cards; printouts; document image files; Web pages; databases; spreadsheets; software; books; ledgers; journals; orders; invoices; bills; vouchers; checks; statements; worksheets; summaries; compilations; computations; charts; diagrams; graphic presentations; drawings; films; digital or chemical process photographs; video; phonographic tape or digital recordings, or transcripts thereof; drafts; jottings; and notes. The term also includes information that serves to identify, locate, or link documents, data, and tangible things, including, without limitation, file inventories; indices; and metadata.

b. "Preserve" is to be interpreted broadly to include, without limitation, taking reasonable steps to prevent the partial or full destruction, alteration, testing, deletion, shredding, incineration, wiping, migration, theft, or mutation of documents, data, and tangible things, and any negligent or intentional handling that would make material incomplete or inaccessible. The term also includes taking reasonable steps to prevent the relocation of documents, data, and tangible things if such relocation would result in the documents, data, or tangible things no longer being in the possession, custody, or control of the party from whom the documents, data, and tangible things are relocated.

4. **Movement of Documents, Data, and Tangible Things.** On August 6, 2007, the Government represented to Plaintiff's counsel that Defendant does not anticipate any movement or transfer of Swinomish documents from the Department of the Interior within the immediate future. Defendant agrees to provide Plaintiff with written notice at least thirty (30) days prior to the movement or transfer of Swinomish documents from the Puget Sound Agency of the BIA to the American Indian Records Repository ("AIRR"). The Government has also represented that it is determining the location of Swinomish documents in other Department of the Interior facilities. Within thirty (30) days of completion of that investigation, Defendant will meet and confer with Plaintiff concerning its findings with respect to any collections of Swinomish documents which are found in other Interior facilities and will provide Plaintiff any existing finding aids or indices of such collections in order for Plaintiff to make a determination as to whether or not it wishes to review the records at the facilities. Such review, if any, will be according to the rules and procedures of those facilities in which the records are located. During the meet and confer the parties will also discuss notice to Plaintiff of collections of Swinomish documents should any of those collections be considered for movement or transfer to AIRR.

5. **Dispute Resolution.** If a party desires clarification of any issue(s) related to the parties' obligations pursuant to, or compliance with, this Joint Stipulation, or believes that the opposing party has violated any term of this Joint Stipulation, the party shall notify the opposing party in writing and state the issue(s) requiring clarification or the grounds upon which the party has formed such belief. As soon

as practicable after receiving such written notification, the parties shall meet and confer in an attempt to clarify the issue(s) in a mutually agreeable manner or resolve the dispute. If the parties cannot clarify the issue(s) in a mutually agreeable manner or do not resolve the dispute within a period of 20 days, either party may file a motion with the Court seeking a ruling regarding the parties' obligations under, and compliance with, this Joint Stipulation.

Agreed to and respectfully submitted for Court approval this 8th day of August, 2007,

s/
STEPHEN T. LeCUYER

Swinomish Indian Tribal Community
P.O. Box 817

La Conner, WA 98257
Tel: (360) 466-7248
Fax: (360) 466-5309

Attorney of Record for Plaintiff

RONALD J. TENPAS
Acting Assistant Attorney General

s/ by SLeCuyer per phone authorization
ROBERT W. RODRIGUES
United States Department of Justice
Environment and Natural Resources Division
P.O. Box 663
Washington, D.C. 20044-0663
Tel: (202) 353-8839
Fax: (202) 353-2021

Attorney of Record for Defendant

OF COUNSEL:

ANTHONY P. HOANG
MARTIN J. LALONDE
JOHN H. MARTIN
United States Department of Justice
Environment and Natural Resources Division
P.O. Box 663
Washington, D.C. 20044-0663
Tel: (202) 305-0241
Fax: (202) 353-2021

KENNETH DALTON
United States Department of the
Interior
Office of the Solicitor
Washington, D.C. 20240

RACHEL M. HOWARD
United States Department of the
Treasury
Financial Management Service
Office of the Chief Counsel
Washington, D.C. 20227

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| SWINOMISH INDIAN TRIBAL COMMUNITY, a federally recognized Indian tribe,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | Case No. 1:06-cv-00899L<br>Judge Francis M. Allegra |

ORDER APPROVING PARTIES' JOINT STIPULATION REGARDING PRESERVATION OF DOCUMENTS, DATA AND TANGIBLE THINGS

This matter comes before the Court upon the Parties' Joint Stipulation Regarding Preservation of Documents, Data, and Tangible Things. The Court has reviewed the Joint Stipulation and is fully advised in the premises. Upon the foregoing, the Parties' Joint Stipulation Regarding Preservation of Documents, Data, and Tangible Things is hereby approved and adopted as an Order of the Court this _____ day of ________, 2007.

______________________________
FRANCIS M. ALLEGRA
U.S. Court of Federal Claims

# In The United States Court of Federal Claims

No. 06-945L

(Filed: September 10, 2007)

NAVAJO NATION
f.k.a. NAVAJO TRIBE OF INDIANS,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

**ORDER**

This matter comes before the court on plaintiff's Motion for Entry of Record Retention Order. Pursuant to RCFC 26(c) as well as the court's inherent power to regulate its proceedings and maintain the integrity of its functions, *see Pueblo of Laguna v. United States*, 60 Fed. Cl. 133, 135-137 (2004), the court hereby **ORDERS** as follows:

1. **General Obligation to Preserve.** During the pendency of this litigation or until further order of the court, defendant and its departments, agencies, employees, agents, and contractors must take reasonable steps to preserve every document, datum, or tangible thing in its possession, custody, or control containing information that is relevant to, or is reasonably calculated to lead to the discovery of admissible evidence relevant to, the subject matter involved in the pending litigation ("Relevant Records"). Plaintiff is reminded that it also has a similar duty to preserve evidence relevant to this case.

2. **Document Inspection and Production.**

   (a) Defendant shall move Relevant Records that, as of the date of this order, are inactive as defined by the Department of Interior ("Interior") Manual Part 303, Chapter 6, and located at the Bureau of Indian Affairs ("BIA") Navajo Regional ("Gallup") Office, the BIA Navajo Regional Realty Office, and the BIA Fort Defiance Agency, and any predecessor offices therefor to the Gallup BIA Warehouse in Gamerco, New Mexico, at which location such records shall be made available to plaintiff for purposes of inspection. At least 10 calendar days

before movement of the records from their present locations to Gamerco, defendant will provide plaintiff with an intermediate move plan or plans, which shall include: an implementation schedule; a description or inventory of the records being moved; the method of transportation; the chain of custody; and the signature of the official responsible for the move. The move process may be monitored by plaintiff or its representative.

(b) After reviewing the above inactive Relevant Records for privileged material, if necessary, defendant shall make those records available for plaintiff's inspection, in accordance with the following schedule:

(i) Within 35 days after entry of this order, defendant shall provide to plaintiff any and all existing indices and inventories that include inactive Relevant Records or boxes thereof located at the above offices in the most useable form readily available. Defendant shall provide to plaintiff additional or supplemental indices or inventories of inactive Relevant Records within 21 days after the creation or discovery of such indices or inventories.

(ii) Within 35 days after receiving such indices or inventories from defendant or within some other time as agreed to by the parties, plaintiff shall designate boxes or records listed in the provided indices or inventories that plaintiff wishes to review for Relevant Records.

(iii) Within 63 days after the date on which plaintiff designates which boxes of one or more of the above offices it wishes to inspect, defendant will begin to make available, on a rolling basis, the boxes from such office(s) for plaintiff's inspection at the BIA warehouse in Gamerco.

(iv) Plaintiff generally shall have 63 days within which to inspect a designated record upon receiving notification from defendant that the designated record has become available for inspection, during which process plaintiff may identify records for production. This inspection period may be extended by agreement of the parties or by the court for good cause shown. At the time of such inspection, defendant shall permit plaintiff to identify or document the condition of records identified by plaintiff for production, including without limitation through the use of audio recorders, digital cameras, or document scanning, provided that no such recordings made by plaintiff shall constitute production of records. Plaintiff's documentation shall be subject to the Protective Order entered by this court on May 11, 2007.

(c) After plaintiff has inspected and identified records for production pursuant to paragraph 2(b) above, defendant may move those records to the American Indian Records Repository ("AIRR") in Lenexa, Kansas, in accordance with defendant's

procedures and protocols for the movement of Indian trust records contained in the Indian Affairs Records Management Manual. After such move(s), defendant shall scan the records identified by plaintiff; code the scanned images at the document level, including data fields as agreed to by the parties; and provide such images and coding to plaintiff within such schedule as agreed to by the parties. For documents originating in media other than paper, defendant shall provide the document in a reasonably usable form, including any form reasonably requested by plaintiff, and also shall provide an opportunity to plaintiff to test or sample such documents upon reasonable request. Defendant shall expedite and prioritize the scanning, coding, and production to plaintiff of identified records.

(d) In accordance with defendant's procedures and protocols for the movement of Indian trust records contained in the Indian Affairs Records Management Manual, defendant may move any boxes that have been either: not designated for inspection within the time period provided for in or agreed to under paragraph 2(b)(ii); or designated but not reviewed by plaintiff within the applicable period provided for under paragraph 2(b)(iv). Nothing herein prevents plaintiff from also seeking to inspect records from the above offices in whatever location they may be found in the future.

(e) Within such schedule as agreed to by the parties, defendant shall input into Interior's Box Inventory Search System ("BISS") data identifying the boxes, files, and documents containing all Relevant Records located as of the date of this order at the AIRR; provide plaintiff access to such BISS database at the Albuquerque office of plaintiff's counsel and the AIRR; and make those records available for plaintiff's inspection at the AIRR. At the time of such inspection, defendant shall permit plaintiff to identify or document the condition of records identified by plaintiff for production, including, without limitation, through the use of audio recorders or digital cameras, provided that no such recordings made by plaintiff shall constitute production of records. Defendant also shall provide to plaintiff all manuals, training materials, and similar documents created by or for Interior which describe the BISS database and its manner of operation and access. Defendant shall provide to plaintiff additional or supplemental indices or inventories for the AIRR that include Relevant Records promptly after the creation of such indices or inventories.

(f) The parties shall meet and confer to discuss schedules and procedures to be used for defendant to make available to plaintiff, for purposes of inspecting active or inactive Relevant Records (determined as of the date of this order) of all of defendant's departments, agencies, offices, employees, agents, and contractors at offices other than those identified in paragraph 2(a) above, as follows:

(i) The parties shall expedite and prioritize inspection of Relevant Records that, as of the date of this order, are inactive and located at: (1) the offices

of the BIA Chinle Agency, the BIA Western Navajo ("Tuba City") Agency, the BIA Eastern Navajo ("Crownpoint") Agency, and the BIA Shiprock Agency, whether inspected at those offices, the BIA Gamerco warehouse, or other mutually agreed locations; (2) the Office of Trust Records ("OTR"), the Office of the Special Trustee ("OST"), and the BIA Land Titles and Records Office ("LTRO"), all located in Albuquerque, New Mexico; or (3) offices of the Department of the Treasury.

(ii) Defendant, after reviewing the records for privileged material, if necessary, shall make the respective record collections available to plaintiff for purposes of inspection and designation. Unless otherwise agreed by the parties, defendant shall provide existing indices or inventories for such records as soon as practicable and make such records available for plaintiff's inspection within 63 days of plaintiff's designation of them.

(iii) Plaintiff shall inspect the records upon receiving notification from defendant that the records have become available for inspection. If plaintiff identifies records for production, defendant shall make arrangements for scanned and coded images, or other data in a reasonably usable form, to be delivered to plaintiff as soon as practicable.

(iv) Unless otherwise agreed by the parties, moves of Relevant Records that are inactive as of the date of this order from the BIA Navajo Agencies identified in paragraph 2(f)(i) above, the OTR, the OST, and the LTRO to locations other than the AIRR shall be subject to the intermediate move plan requirement of section 2(a) above.

(g) The parties shall attempt to reach agreement on all matters related to document inspection and shall coordinate inspection of Relevant Records in a manner that will minimize the disruption of ongoing governmental activities.

3. **Indexation and Inventorying.**

(a) Within 126 days after entry of this order, the parties shall identify all of their respective repositories besides the AIRR and those addressed in section 2(a) above that are reasonably anticipated to be subject to discovery in this case and determine whether indices or inventories exist for each location. The parties also shall have ongoing duties to identify evidence relevant to this case in their respective possession, custody, or control.

(b) Within the same time period or as the parties may agree, the parties shall provide to each other existing indices and inventories for such repositories in the most

useful form readily available, except for indices and inventories previously provided pursuant to paragraph 2 of this Order.

(c) If a party is unable to provide the other with indices or inventories of its repositories containing evidence relevant to this case, then the parties shall meet and confer as soon as practicable about the possibility of using, as may be appropriate, a collection-by-collection approach, including on-site reviews, to address the sufficiency of existing indices or inventories and to discuss whether additional indexation of specific record collections is necessary and the scope, timing, and method of any additional indexation or elaboration of inventories at each location based on the particular facts relating to each repository and record characteristics. The parties shall provide additional or supplemental indices or inventories that include evidence relevant to this case within 21 days after the creation or discovery of such indices or inventories.

(d) The parties shall cooperate in good faith to attempt to reach agreement on all issues regarding the indexation and inventorying of documents, data, and tangible things. These issues include, but are not necessarily limited to:

(i) the extent of the indexation and inventorying obligation, identifying the types of material to be indexed and inventoried, the subject matter, time frame, the authors and addressees, and key words to be used in identifying such materials;

(ii) the identification of persons responsible for carrying out the indexation or inventorying;

(iii) whether indexation or inventorying will require suspending or modifying any routine processes or procedures, with special attention to document-management programs and the recycling of computer data storage media;

(iv) the timing of the indexation or inventorying process in relation to the movement of records, and inspection thereof, envisioned in paragraph 2, above;

(v) the methods to index or inventory any volatile but potentially discoverable material, such as voicemail, active data in databases, or electronic messages;

(vi) the anticipated costs of indexation and inventorying and ways to reduce or share these costs; and

(vii) policies and procedures to review and modify the indexation and inventorying obligation as this case proceeds, eliminating or adding particular categories of documents, data, and tangible things.

(e) If, after conferring to develop an indexation plan, counsel do not reach agreement on the subjects listed under paragraph 3(d) of this order or on other material aspects of indexation, the parties shall file expeditiously with the court a statement of the unresolved issues together with each party's proposal for their resolution of the issues.

4. **Compliance.** The parties shall establish policies, procedures, and controls for monitoring compliance with this order and, on or before 63 days after entry of this order, file a status report with the court describing those policies, procedures, and controls. The parties' counsel shall immediately notify this court if, at any time, they become aware of a violation of this order (*e.g.*, the destruction or loss of documents).

5. **Definitions.** For purposes of this order:

(a) "Documents, data, and tangible things" is to be interpreted broadly to include, without limitation, writings; records; files; contracts; leases; correspondence; reports; memoranda; calendars; diaries; minutes; electronic messages; voicemail; E-mail; telephone message records or logs; computer and network activity logs; hard drives; backup data; removable computer storage media such as tapes, disks, and cards; printouts; document image files; Web pages; databases; spreadsheets; software; books; ledgers; journals; orders; invoices; bills; vouchers; checks; statements; worksheets; summaries; compilations; computations; charts; diagrams; graphic presentations; drawings; films; digital or chemical process photographs; video; phonographic tape or digital recordings, or transcripts thereof; drafts; jottings; and notes. The term also includes information that serves to identify, locate, or link documents, data, and tangible things, including, without limitation, file inventories; indices; and metadata.

(b) "Preservation" is to be interpreted broadly to accomplish the goal of maintaining the integrity of all documents, data, and tangible things reasonably anticipated to be subject to discovery under RCFC 26, 45, and 56(e) in this action. Preservation includes taking reasonable steps to prevent the partial or full destruction, alteration, testing, deletion, shredding, incineration, wiping, relocation, migration, theft, mutation, negligent handling, or intentional mishandling of any documents, data, or tangible things, if such action would make that material incomplete or inaccessible.

6. **Further Instructions; Modification.**

(a) If, after counsel confer, unresolved issues remain but require resolution concerning matters arising under this order or other material aspects of preservation, inspection and production, or indexation and inventorying, the parties shall file with the court a statement of the unresolved issues together with each party's proposal for their resolution.

(b) Either party also may apply to the court for further instructions regarding, *inter alia*:

(i) defendant's obligation to preserve specific categories of documents, data, or tangible things;

(ii) any aspect of the inspection or indexation tasks not herein clearly defined; and

(iii) allocating copying costs and maintaining the confidentiality of information contained in various records.

(c) Recognizing that the parties may perceive better ways of accomplishing the purposes of this order, the court notes that joint motions to modify any of the procedures listed herein will likely be received favorably.

7. **Sanctions.** Failure to comply with this order may lead to the imposition of sanctions. *See Pueblo of Laguna*, 60 Fed. Cl. at 135-137; *United Medical Supply Co., Inc. v. United States*, 77 Fed. Cl. 257 (2007).

8. **Dissemination.** This order shall be distributed by defendant and plaintiff to all relevant agencies, departments, offices, divisions, contractors, and individuals.

**IT IS SO ORDERED.**

s/ Francis M. Allegra
Francis M. Allegra
Judge

# In the United States Court of Federal Claims

No. 06-900L
Filed October 1, 2007

| | |
|---|---|
| ROUND VALLEY INDIAN TRIBES, | * |
| Plaintiff, | * |
| v. | * |
| THE UNITED STATES, | * |
| Defendant. | * |

## PROTECTIVE ORDER

Pursuant to Rule 26(c) of the Rules of the Court of Federal Claims (RCFC), as well as the Court's inherent power to regulate its proceedings and maintain the integrity of its functions, the Court hereby issues the following Order:

### 1. Obligation to Preserve Certain Documents, Data, and Tangible Things

During the pendency of this litigation (including informal settlement discussions, ADR, and/or any appeals herein), the parties, as well as their agencies, their employees, and their agents, shall take reasonable steps to preserve those documents, data, or tangible things that are in their possession, custody, or control, and that contain information that is relevant to, or may reasonably lead to the discovery of information that is relevant to, the subject matter of the pending litigation (including claims and defenses), as that subject matter is set forth in the Complaint and any amendments thereof and the Answer to such complaint and any amendments thereof. This Order does not impose an obligation on the parties to retain duplicate copies of the documents, data, or tangible things that are subject to the Order. Additionally, nothing in this Order Supplants the discovery obligations under the RCFC.

### 2. Mechanism for Ensuring Compliance With This Order

Defendant, in consultation with Plaintiff, shall establish a mechanism for ensuring on-going compliance with this Order, such as periodic reminders of record retention obligations to be sent to appropriate document repositories by a date to be determined by the Court and then every six months thereafter for the pendency of this case. Defendant shall file a report setting forth its compliance mechanism, within 60 days of the date of this Order. The compliance mechanism shall include the

parties' specification of the subject matters at issue in this litigation and the documents, data, or tangible things that the parties reasonably anticipate to be subject to discovery in this case and to this Order. Counsel shall notify the Court and opposing counsel, as soon as is reasonably possible, if, at any time, they become aware of a violation of Paragraph 1 of this Order (i.e., the destruction or loss of certain documents, data, and/or tangible things).

**3. Definitions**

For purposes of this Order, the following terms are to defined as follows:

(a) "Documents, data, and tangible things" shall be interpreted to consist of writings; records; files; contracts; leases; correspondence; reports; memoranda; calendars; diaries; minutes; electronic mail (e-mail) ; telephone message records or logs; computer and network activity logs; hard drives; backup data; removable computer storage media, such as tapes, disks, and cards; printouts; document image files; databases; spreadsheets; software; books; ledgers; journals; orders; invoices; bills; vouchers; checks; statements; worksheets; summaries; compilations; computations; charts; diagrams; graphic presentations; drawings; films; digital or chemical process photographs; video; phonographic or digital recordings, or transcripts thereof; and circulated drafts. The term also shall include information that serves to identify, locate, or link documents, data, and tangible things, such as file inventories and indices.

(b) "Preserve" shall be interpreted to accomplish the goal of maintaining the integrity of all documents, data, and tangible things reasonably anticipated to be subject to discovery in this case as related to the subject matters defined by the Parties under paragraph 2 above. "Preserve" includes the parties taking reasonable steps to prevent the partial or full destruction, alteration, deletion, shredding, incineration, wiping, theft, or mutation of documents, data, and tangible things, and any negligent or intentional handling that would make material incomplete or inaccessible.

**4. Movement(s) or Transfer(s) of Certain Documents, Data, and Tangible Things**

In the event that Defendant anticipates moving or transferring trust documents relating to Plaintiff from the Central California Agency and Pacific Regional Office of the Bureau of Indian Affairs (BIA) to the American Indian Records Repository (AIRR), Defendant shall provide Plaintiff with notice of such document movement at least 20 days in advance of the movement. Such written advance notice shall include a copy of any move plans and box inventories produced pursuant to regulations and procedures governing movement of trust documents.

**5. Dispute Resolution**

If a party desires clarification of any issue(s) related to the parties' obligations pursuant to, or compliance with, this Order, or believes that the opposing party has violated any term of this Order, the party shall notify the opposing party in writing and state the issue(s) requiring clarification or the grounds upon which the party has formed such belief. As soon as practicable after receiving such written notification, the parties shall meet and confer in an attempt to clarify the issue(s) in a

mutually agreeable manner or resolve the dispute. If the parties cannot clarify the issue(s) in a mutually agreeable manner or do not resolve the dispute, within a period of 20 days either party may file a motion with the Court seeking a ruling regarding the parties' obligations under, and compliance with, this Order.

**6. Further Instructions, Clarification, or Modification of This Order**

Each party may apply to the Court, at any time, for further instructions, clarification, or modification of this Order, regarding, inter alia, their obligations to preserve specific categories of documents, data, and tangible things covered by the Order. The parties are encouraged to confer among themselves and to make a joint proposal or submission to the Court, wherever appropriate or possible.

**IT IS SO ORDERED.**

**s/Susan G. Braden**
**SUSAN G. BRADEN**
**Judge**

# In the United States Court of Federal Claims

No. 07-002L
Filed October 26, 2007

*************************************

PAWNEE NATION OF OKLAHOMA,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

*************************************

## PROTECTIVE ORDER

Pursuant to Rule of the Court of Federal Claims 26(c) ("RCFC"), as well as the Court's inherent power to regulate its proceedings and maintain the integrity of its functions, the Court hereby issues the following Order:

### 1. Obligation to Preserve Certain Documents, Data, and Tangible Things

During the pendency of this litigation (including informal settlement discussions, ADR, and/or any appeals herein), the parties, as well as their agencies, their employees, and their agents, will take reasonable steps to preserve those documents, data, or tangible things that are in their possession, custody, or control, and that contain information that is relevant to, or may reasonably lead to the discovery of information that is relevant to, the subject matter of the pending litigation (including claims and defenses), as that subject matter is set forth in the Complaint and any amendments thereof and the Answer to such complaint and any amendments thereof. This Order does not impose an obligation on the parties to retain duplicate copies of the documents, data, or tangible things that are subject to the Order. Additionally, nothing in this Order Supplants the discovery obligations under the RCFC.

### 2. Mechanism for Ensuring Compliance With This Order

Defendant, in consultation with Plaintiff, shall establish a mechanism for ensuring on-going compliance with this Order, such as periodic reminders of record retention obligations to be sent to appropriate document repositories by a date to be determined by the Court and then every six months

thereafter for the pendency of this case. Defendant shall file a report setting forth its compliance mechanism, within 60 days of the date of this Order. The compliance mechanism shall include the parties' specification of the subject matters at issue in this litigation and the documents, data, or tangible things that the parties reasonably anticipate to be subject to discovery in this case and to this Order. Counsel shall notify the Court and opposing counsel, as soon as is reasonably possible, if, at any time, they become aware of a violation of Paragraph 1 of this Order (i.e., the destruction or loss of certain documents, data, and/or tangible things).

**3. Definitions**

For purposes of this Order, the following terms are to defined as follows:

(a) "Documents, data, and tangible things" shall be interpreted to consist of writings; records; files; contracts; leases; correspondence; reports; memoranda; calendars; diaries; minutes; electronic mail (e-mail) ; telephone message records or logs; computer and network activity logs; hard drives; backup data; removable computer storage media, such as tapes, disks, and cards; printouts; document image files; databases; spreadsheets; software; books; ledgers; journals; orders; invoices; bills; vouchers; checks; statements; worksheets; summaries; compilations; computations; charts; diagrams; graphic presentations; drawings; films; digital or chemical process photographs; video; phonographic or digital recordings, or transcripts thereof; and circulated drafts. The term also shall include information that serves to identify, locate, or link documents, data, and tangible things, such as file inventories and indices.

(b) "Preserve" shall be interpreted to accomplish the goal of maintaining the integrity of all documents, data, and tangible things reasonably anticipated to be subject to discovery in this case as related to the subject matters defined by the Parties under paragraph 2 above. "Preserve" includes the parties taking reasonable steps to prevent the partial or full destruction, alteration, deletion, shredding, incineration, wiping, theft, or mutation of documents, data, and tangible things, and any negligent or intentional handling that would make material incomplete or inaccessible.

**4. Movement(s) or Transfer(s) of Certain Documents, Data, and Tangible Things**

In the event that Defendant anticipates moving or transferring trust documents relating to Plaintiff from the Southern Plains Regional Office (BIA) and the Pawnee Agency (BIA) to the American Indian Records Repository (AIRR), Defendant shall provide Plaintiff with notice of such document movement at least 20 days in advance of the movement. Such written advance notice shall include a copy of any move plans and box inventories produced pursuant to regulations and procedures governing movement of trust documents.

**5. Dispute Resolution**

If a party desires clarification of any issue(s) related to the parties' obligations pursuant to, or compliance with, this Order, or believes that the opposing party has violated any term of this

Order, the party shall notify the opposing party in writing and state the issue(s) requiring clarification or the grounds upon which the party has formed such belief. As soon as practicable after receiving such written notification, the parties shall meet and confer in an attempt to clarify the issue(s) in a mutually agreeable manner or resolve the dispute. If the parties cannot clarify the issue(s) in a mutually agreeable manner or do not resolve the dispute, within a period of 20 days either party may file a motion with the Court seeking a ruling regarding the parties' obligations under, and compliance with, this Order.

**6. Further Instructions, Clarification, or Modification of This Order**

Each party may apply to the Court, at any time, for further instructions, clarification, or modification of this Order, regarding, inter alia, their obligations to preserve specific categories of documents, data, and tangible things covered by the Order. The parties are encouraged to confer among themselves and to make a joint proposal or submission to the Court, wherever appropriate or possible.

The court, however, reserves the right, after reviewing the record and other information submitted by the parties, to modify this Protective Order in the event such information is not confidential, privileged, proprietary, or would adversely affect national defense and/or national security upon public disclosure.

**IT IS SO ORDERED.**

s/Susan G. Braden
**SUSAN G. BRADEN**
**Judge**

# In The United States Court of Federal Claims

No. 06-934L

(Filed: October 24, 2007)

THE KAW NATION OF OKLAHOMA,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

**DOCUMENT PRESERVATION ORDER**

This matter comes before the court after a joint status conference held on September 11, 2007, at which the parties were directed to attempt to negotiate a mutually agreeable Document Preservation Order. The parties were largely unsuccessful in this regard.

Nonetheless, the court finds that good cause exists for approval and entry of a Document Preservation Order pursuant to RCFC 26(c) as well as the court's inherent power to regulate its proceedings and maintain the integrity of its functions. *See Pueblo of Laguna v. United States*, 60 Fed. Cl. 133, 135-37 (2004). As such, the court hereby **ORDERS** as follows:

1. **General Obligation to Preserve.** During the pendency of this litigation or until further order of the court, defendant and its departments, agencies, employees, agents, and contractors must take reasonable steps to preserve every document, datum, or tangible thing in its possession, custody, or control containing information that is relevant to, or is reasonably calculated to lead to the discovery of admissible evidence relevant to, the subject matter involved in the pending litigation (Relevant Records). Plaintiff is reminded that it has a similar duty to preserve evidence relevant to this case.

2. **Document Inspection and Production.**

   (a) Defendant shall move Relevant Records that, as of the date of this order, are inactive as defined by the Department of Interior (Interior) Manual Part 303, Chapter 6, wherever located, to the Gallup BIA Warehouse in Gamerco, New Mexico, or such other location as may be agreed upon by the parties, at which location such records shall be made available to plaintiff for purposes of

inspection. At least 10 calendar days before movement of the records from their present locations to Gamerco (or as otherwise agreed), defendant will provide plaintiff with an intermediate move plan or plans, which shall include: an implementation schedule; a description or inventory of the records being moved; the method of transportation; the chain of custody; and the signature of the official responsible for the move. The move process may be monitored by plaintiff or its representative.

(b) After reviewing the above referenced inactive Relevant Records for privileged material, if necessary, defendant shall make those records available for plaintiff's inspection, in accordance with the following schedule:

(i) Within 35 days after entry of this order, defendant shall provide to plaintiff any and all existing indices and inventories that include the inactive records referenced in paragraph 2(a), said documents to be provided in the most usable form readily available. Defendant shall provide to plaintiff additional or supplemental indices or inventories of inactive Relevant Records within 21 days after the creation or discovery of such indices or inventories.

(ii) Within 35 days after receiving such indices or inventories from defendant or within some other time as agreed to by the parties, plaintiff shall designate boxes or records listed in the provided indices or inventories that plaintiff wishes to review for Relevant Records.

(iii) Within 63 days after the date on which plaintiff designates the boxes it wishes to inspect, defendant will begin to make available, on a rolling basis, the boxes from such office(s) for plaintiff's inspection at the BIA warehouse in Gamerco.

(iv) Plaintiff generally shall have 63 days within which to inspect a designated record upon receiving notification from defendant that the designated record has become available for inspection, during which time plaintiff may identify records for production. This inspection period may be extended by agreement of the parties or by the court for good cause shown. At the time of such inspection, defendant shall permit plaintiff to identify or document the condition of records identified by plaintiff for production, including, without limitation, through the use of audio recorders, digital cameras, or document scanning, provided that no such recordings made by plaintiff shall constitute production of records. Plaintiff's documentation shall be subject to the Protective Order entered separately by this court this day.

(c) After plaintiff has inspected and identified records for production pursuant to paragraph 2(b) above, defendant may move those records to the American Indian

Records Repository (AIRR) in Lenexa, Kansas, in accordance with defendant's procedures and protocols for the movement of Indian trust records contained in the Indian Affairs Records Management Manual. After such move(s), defendant shall scan the records identified by plaintiff; code the scanned images at the document level, including data fields as agreed to by the parties; and provide such images and coding to plaintiff within such schedule as agreed to by the parties. For documents originating in media other than paper, defendant shall provide the document in a reasonably usable form, including any form reasonably requested by plaintiff, and also shall provide plaintiff with an opportunity to test or sample such documents upon reasonable request. Defendant shall expedite and prioritize the scanning, coding, and production to plaintiff of identified records.

(d) In accordance with defendant's procedures and protocols for the movement of Indian trust records contained in the Indian Affairs Records Management Manual, defendant may move any boxes that have been either: not designated for inspection within the time period provided for, or agreed to, under paragraph 2(b)(ii); or designated but not reviewed by plaintiff within the applicable period provided for under paragraph 2(b)(iv). Nothing herein prevents plaintiff from also seeking to inspect such records in whatever location they may be found in the future.

(e) Within such schedule as agreed to by the parties, defendant shall input into Interior's Box Inventory Search System (BISS) data identifying the boxes, files, and documents containing all Relevant Records located as of the date of this order at the AIRR; provide plaintiff access to the BISS database at the Albuquerque office of plaintiff's counsel and the AIRR; and make those records available for plaintiff's inspection at the AIRR. At the time of such inspection, defendant shall permit plaintiff to identify or document the condition of records identified by plaintiff for production, including, without limitation, through the use of audio recorders or digital cameras, provided that no such recordings made by plaintiff shall constitute production of records. Defendant also shall provide to plaintiff all manuals, training materials, and similar documents created by or for Interior which describe the BISS database and its manner of operation and access. Defendant shall provide to plaintiff additional or supplemental indices or inventories for the AIRR that include Relevant Records promptly after the creation of such indices or inventories.

(f) The parties shall meet and confer to discuss schedules and procedures to be used for defendant to make available to plaintiff, for purposes of inspecting active or inactive Relevant Records (determined as of the date of this order), as follows:

(i) Defendant, after conducting any necessary review of the records for privileged material, shall make the respective record collections available to plaintiff for purposes of inspection and designation. Unless otherwise agreed by the parties, defendant shall provide existing indices or

inventories for such records as soon as practicable and make such records available for plaintiff's inspection within 63 days of plaintiff's designation of them,

(ii) Plaintiff shall inspect the records upon receiving notification from defendant that the records have become available for inspection. If plaintiff identifies records for production, defendant shall make arrangements for scanned and coded images, or other data in a reasonably usable form, to be delivered to plaintiff as soon as practicable.

(iii) Unless otherwise agreed by the parties, moves of Relevant Records that are inactive as of the date of this order shall be subject to the intermediate move plan requirement of paragraph 2(a) above.

(g) The parties shall attempt to reach agreement on all matters related to document inspection and shall coordinate inspection of Relevant Records in a manner that will minimize the disruption of ongoing governmental activities.

3. **Indexation and Inventorying.**

(a) Within 126 days after entry of this order, the parties shall identify all their respective repositories besides the AIRR and those facilities addressed in paragraph 2(a) above that are reasonably anticipated to be subject to discovery in this case and determine whether indices or inventories exist for each location. The parties also shall have ongoing duties to identify evidence relevant to this case in their respective possession, custody, or control.

(b) Within the same time period or as the parties may agree, the parties shall provide to each other existing indices and inventories for such repositories in the most useful form readily available, except for indices and inventories previously provided pursuant to paragraph 2 above.

(c) If a party is unable to provide the other with indices or inventories of its repositories containing evidence relevant to this case, then the parties shall meet and confer as soon as practicable about the appropriateness of using a collection-by-collection approach, including on-site reviews, to address the sufficiency of existing indices or inventories and to discuss whether additional indexation of specific record collections is necessary and the scope, timing, and method of any additional indexation or elaboration of inventories at each location based on the particular facts relating to each repository and record characteristics. The parties shall provide additional or supplemental indices or inventories that include evidence relevant to this case within 21 days after the creation or discovery of such indices or inventories.

(d) The parties shall cooperate in good faith to attempt to reach agreement on all issues regarding the indexation and inventorying of documents, data, and tangible things. These issues include, but are not necessarily limited to:

(i) the extent of the indexation and inventorying obligation, identifying the types of material to be indexed and inventoried, the subject matter, time frame, the authors and addressees, and key words to be used in identifying such materials;

(ii) the identification of persons responsible for carrying out the indexation or inventorying;

(iii) whether indexation or inventorying will require suspending or modifying any routine processes or procedures, with special attention to document-management programs and the recycling of computer data storage media;

(iv) the timing of the indexation or inventorying process in relation to the movement of records, and inspection thereof, envisioned in paragraph 2, above;

(v) the methods to index or inventory any volatile but potentially discoverable material, such as voicemail, active data in databases, or electronic messages;

(vi) the anticipated costs of indexation and inventorying and ways to reduce or share these costs; and

(vii) policies and procedures to review and modify the indexation and inventorying obligation as this case proceeds, eliminating or adding particular categories of documents, data, and tangible things.

4. **Compliance.** The parties shall establish policies, procedures, and controls for monitoring compliance with this order and, on or before 63 days after entry of this order, file a status report with the court describing those policies, procedures, and controls. The parties' counsel shall immediately notify this court if, at any time, they become aware of a violation of this order (*e.g.*, the destruction or loss of documents).

5. **Definitions.** For purposes of this order:

(a) "Documents, data, and tangible things" is to be interpreted broadly to include, without limitation, writings; records; files; contracts; leases; correspondence; reports; memoranda; calendars; diaries; minutes; electronic messages; voicemail; E-mail; telephone message records or logs; computer and network activity logs; hard drives; backup data; removable computer storage media such as tapes, disks, and cards; printouts; document image files; Web pages; databases; spreadsheets;

software; books; ledgers; journals; orders; invoices; bills; vouchers; checks; statements; worksheets; summaries; compilations; computations; charts; diagrams; graphic presentations; drawings; films; digital or chemical process photographs; video; phonographic tape or digital recordings, or transcripts thereof; drafts; jottings; and notes. The term also includes information that serves to identify, locate, or link documents, data, and tangible things, including, without limitation, file inventories; indices; and metadata.

(b) "Preservation" is to be interpreted broadly to accomplish the goal of maintaining the integrity of all documents, data, and tangible things reasonably anticipated to be subject to discovery under RCFC 26, 45, and 56(e) in this action. Preservation includes taking reasonable steps to prevent the partial or full destruction, alteration, testing, deletion, shredding, incineration, wiping, relocation, migration, theft, mutation, negligent handling, or intentional mishandling of any documents, data, or tangible things, if such action would make that material incomplete or inaccessible.

6. **Further Instructions; Modification.**

(a) If after counsel confer, unresolved issues remain concerning matters arising under this order or other material aspects of preservation, inspection and production, or indexation and inventorying, the parties shall file with the court a statement of the unresolved issues together with each party's proposal for their resolution.

(b) Either party also may apply to the court for further instructions regarding, *inter alia*:

(i) defendant's obligation to preserve specific categories of documents, data, or tangible things;

(ii) any aspect of the inspection or indexation tasks not herein clearly defined; and

(iii) allocating copying costs and maintaining the confidentiality of information contained in various records.

(c) Recognizing that the parties may perceive better ways of accomplishing the purposes of this order, the court notes that joint motions to modify any of the procedures listed herein will likely be received favorably.

7. **Sanctions.** Failure to comply with this order may lead to the imposition of sanctions. *See Pueblo of Laguna*, 60 Fed. Cl. at 135-37; *United Medical Supply Co., Inc. v. United States*, 77 Fed. Cl. 257 (2007).

8. **Dissemination.** This order shall be distributed by defendant and plaintiff to all relevant agencies, departments, offices, divisions, contractors, and individuals.

**IT IS SO ORDERED.**

s/ Francis M. Allegra
Francis M. Allegra
Judge

# In the United States Court of Federal Claims

No. 06-888L
Filed October 25, 2007

***************************************

QUECHAN TRIBE OF THE FORT YUMA INDIAN RESERVATION,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

***************************************

## PROTECTIVE ORDER

Pursuant to Rule of the Court of Federal Claims 26(c) ("RCFC"), as well as the Court's inherent power to regulate its proceedings and maintain the integrity of its functions, the Court hereby issues the following Order:

### 1. Obligation to Preserve Certain Documents, Data, and Tangible Things

During the pendency of this litigation (including informal settlement discussions, ADR, and/or any appeals herein), the parties, as well as their agencies, their employees, and their agents, will take reasonable steps to preserve those documents, data, or tangible things that are in their possession, custody, or control, and that contain information that is relevant to, or may reasonably lead to the discovery of information that is relevant to, the subject matter of the pending litigation (including claims and defenses), as that subject matter is set forth in the Complaint and any amendments thereof and the Answer to such complaint and any amendments thereof. This Order does not impose an obligation on the parties to retain duplicate copies of the documents, data, or tangible things that are subject to the Order. Additionally, nothing in this Order Supplants the discovery obligations under the RCFC.

### 2. Mechanism for Ensuring Compliance With This Order

Defendant, in consultation with Plaintiff, shall establish a mechanism for ensuring on-going compliance with this Order, such as periodic reminders of record retention obligations to be sent to

appropriate document repositories by a date to be determined by the Court and then every six months thereafter for the pendency of this case. Defendant shall file a report setting forth its compliance mechanism, within 60 days of the date of this Order. The compliance mechanism shall include the parties' specification of the subject matters at issue in this litigation and the documents, data, or tangible things that the parties reasonably anticipate to be subject to discovery in this case and to this Order. Counsel shall notify the Court and opposing counsel, as soon as is reasonably possible, if, at any time, they become aware of a violation of Paragraph 1 of this Order (i.e., the destruction or loss of certain documents, data, and/or tangible things).

**3. Definitions**

For purposes of this Order, the following terms are to defined as follows:

(a) "Documents, data, and tangible things" shall be interpreted to consist of writings; records; files; contracts; leases; correspondence; reports; memoranda; calendars; diaries; minutes; electronic mail (e-mail) ; telephone message records or logs; computer and network activity logs; hard drives; backup data; removable computer storage media, such as tapes, disks, and cards; printouts; document image files; databases; spreadsheets; software; books; ledgers; journals; orders; invoices; bills; vouchers; checks; statements; worksheets; summaries; compilations; computations; charts; diagrams; graphic presentations; drawings; films; digital or chemical process photographs; video; phonographic or digital recordings, or transcripts thereof; and circulated drafts. The term also shall include information that serves to identify, locate, or link documents, data, and tangible things, such as file inventories and indices.

(b) "Preserve" shall be interpreted to accomplish the goal of maintaining the integrity of all documents, data, and tangible things reasonably anticipated to be subject to discovery in this case as related to the subject matters defined by the Parties under paragraph 2 above. "Preserve" includes the parties taking reasonable steps to prevent the partial or full destruction, alteration, deletion, shredding, incineration, wiping, theft, or mutation of documents, data, and tangible things, and any negligent or intentional handling that would make material incomplete or inaccessible.

**4. Movement(s) or Transfer(s) of Certain Documents, Data, and Tangible Things**

In the event that Defendant anticipates moving or transferring trust documents relating to Plaintiff from the Colorado River Agency, the Fort Yuma Agency, and Phoenix (Western) Regional Office of the Bureau of Indian Affairs (BIA) to the American Indian Records Repository (AIRR), Defendant shall provide Plaintiff with notice of such document movement at least 20 days in advance of the movement. Such written advance notice shall include a copy of any move plans and box inventories produced pursuant to regulations and procedures governing movement of trust documents.

**5. Dispute Resolution**

If a party desires clarification of any issue(s) related to the parties' obligations pursuant to, or compliance with, this Order, or believes that the opposing party has violated any term of this Order, the party shall notify the opposing party in writing and state the issue(s) requiring clarification or the grounds upon which the party has formed such belief. As soon as practicable after receiving such written notification, the parties shall meet and confer in an attempt to clarify the issue(s) in a mutually agreeable manner or resolve the dispute. If the parties cannot clarify the issue(s) in a mutually agreeable manner or do not resolve the dispute, within a period of 20 days either party may file a motion with the Court seeking a ruling regarding the parties' obligations under, and compliance with, this Order.

**6. Further Instructions, Clarification, or Modification of This Order**

Each party may apply to the Court, at any time, for further instructions, clarification, or modification of this Order, regarding, inter alia, their obligations to preserve specific categories of documents, data, and tangible things covered by the Order. The parties are encouraged to confer among themselves and to make a joint proposal or submission to the Court, wherever appropriate or possible.

The court, however, reserves the right, after reviewing the record and other information submitted by the parties, to modify this Protective Order in the event such information is not confidential, privileged, proprietary, or would adversely affect national defense and/or national security upon public disclosure.

**IT IS SO ORDERED.**

s/Susan G. Braden
**SUSAN G. BRADEN**
**Judge**

# In the United States Court of Federal Claims

No. 02-25L

(Filed: March 19, 2004)

JICARILLA APACHE NATION, formerly
JICARILLA APACHE TRIBE,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

FILED
MAR 19 2004
U.S. COURT OF
FEDERAL CLAIMS

## ORDER

For the reasons discussed in the order issued today in *Pueblo of Laguna v. United States*, No. 02-24L, and pursuant to RCFC 16(c) and 26(c), as well as this court's inherent power to regulate its proceedings and maintain the integrity of its functions, **IT IS ORDERED**:

1. **General Obligation to Preserve.** During the pendency of this litigation or until further order of the court, defendant, its agencies, and its employees must take reasonable steps to preserve every document, data or tangible thing in its possession, custody or control, containing information that is relevant to, or may reasonably lead to the discovery of information relevant to, the subject matter involved in the pending litigation. Plaintiff is reminded that it also has a similar duty to preserve evidence relevant to this case.

2. **Document Inspection.**

(a) The Department of the Interior ("DOI") shall move inactive Jicarilla Apache Nation records from the BIA Southwest Regional Office to the Office of Trust Records ("OTR"), in Albuquerque, New Mexico, at which location said inactive records shall be made available to plaintiff for purposes of inspection. At least 10 calender days prior to movement of the inactive records, DOI will provide plaintiff with a move plan, which plan shall include: an implementation schedule; a description or inventory of the records being moved; the method of transportation; the chain of

custody; and the signature of the official responsible for the move. Compliance with the move plan may be monitored by plaintiff or its representative.

(b) After reviewing the inactive records at OTR and the Jicarilla Agency for privileged material, DOI shall make those records available for plaintiff's inspection, in accordance with the following schedule:

(i) On or before April 2, 2004, DOI shall provide plaintiff with any and all existing indices of inactive records or record boxes located at the OTR, the Southwest Regional Office, or the Jicarilla Agency.

(ii) On or before May 3, 2004, plaintiff shall designate the boxes or records listed in the provided indices that plaintiff wishes to review for Jicarilla Apache Nation trust records.

(iii) Within 49 days from the date on which plaintiff designates which boxes at OTR it wishes to inspect, DOI will begin to make available, on a rolling basis, the boxes at OTR for plaintiff's inspection.

(iv) Within 63 days from the date on which plaintiff designates which boxes at the Jicarilla Agency it wishes to inspect, DOI will begin to make available, on a rolling basis, the boxes at the Jicarilla Agency for plaintiff's inspection.

(c) Plaintiff generally shall have 63 days within which to inspect a designated record upon receiving notification from DOI that the designated record has become available for inspection, during which process plaintiff may identify relevant documents for production. This inspection period may be extended by the court for good cause shown. Defendant shall provide to plaintiff copies or electronic images of the documents identified by plaintiff pursuant to this provision within such time as is agreed to by the parties; barring such agreement, the parties shall each file with the court their proposed schedule for the production of such copies or images, with an explanation in support thereof.

(d) At such time as the inactive records identified by plaintiff have been copied or imaged by defendant, DOI may move those records from OTR and the Jicarilla Agency in accordance with its normal procedures and protocols for the movement of Indian trust records. In addition, DOI may move any boxes designated by plaintiff from OTR or the Jicarilla Agency

that plaintiff has not reviewed within three months from the date on which DOI made those boxes available for plaintiff's inspection. DOI may, at any time, move boxes that have not been designated for inspection, according to normal procedures and protocols for the movement of Indian trust records. Nothing herein prevents plaintiff from also seeking to inspect relevant records from OTR, the BIA Southwest Regional Office, or the Jicarilla Agency in whatever location they may be found in the future.

3. **Indexation.**

(a). The parties shall meet and confer, as soon as practicable, and no later than April 19, 2004, to develop a plan for indexing documents, data and tangible things reasonably anticipated to be subject to discovery in this case. The resulting plan shall be submitted to this court as a proposed order under RCFC 16(e).

(b) The parties should attempt to reach agreement on all issues regarding the indexation of documents, data, and tangible things. These issues include, but are not necessarily limited to:

(i) the extent of the indexation obligation, identifying the types of material to be indexed, the subject matter, time frame, the authors and addressees, and key words to be used in identifying such materials;

(ii) the identification of persons responsible for carrying out the indexation;

(iii) whether indexation will require suspending or modifying any routine processes or procedures, with special attention to document-management programs and the recycling of computer data storage media;

(iv) the timing of the indexation process in relation to the movement of records, and inspection thereof, envisioned in paragraph 2, above;

(v) the methods to index any volatile but potentially discoverable material, such as voicemail, active data in databases, or electronic messages;

(vi) the anticipated costs of indexation and ways to reduce or share these costs; and

(vii) a mechanism to review and modify the indexation obligation as this case proceeds, eliminating or adding particular categories of documents, data, and tangible things.

(c) If, after conferring to develop an indexation plan, counsel do not reach agreement on the subjects listed under paragraph 3(b) of this order or on

other material aspects of indexation, the parties shall file with the court, within seven days of the conference, a statement of the unresolved issues together with each party's proposal for their resolution of the issues.

4. **Compliance.** Defendant shall establish a mechanism for monitoring compliance with this order and, on or before April 19, 2004, file a status report with the court describing that mechanism. Defendant's counsel shall immediately notify this court if, at any time, they become aware of a violation of this order (*e.g.*, the destruction or loss of documents).

5. **Definitions.** For purposes of this order:

   (a) "Documents, data, and tangible things" is to be interpreted broadly to include writings; records; files; correspondence; reports; memoranda; calendars; diaries; minutes; electronic messages; voicemail; E-mail; telephone message records or logs; computer and network activity logs; hard drives; backup data; removable computer storage media such as tapes, disks, and cards; printouts; document image files; Web pages; databases; spreadsheets; software; books; ledgers; journals; orders; invoices; bills; vouchers; checks; statements; worksheets; summaries; compilations; computations; charts; diagrams; graphic presentations; drawings; films; charts; digital or chemical process photographs; video; phonographic tape; or digital recordings or transcripts thereof; drafts; jottings; and notes. Information that serves to identify, locate, or link such material, such as file inventories, file folders, indices, and metadata, is also included in this definition.

   (b) "Preservation" is to be interpreted broadly to accomplish the goal of maintaining the integrity of all documents, data, and tangible things reasonably anticipated to be subject to discovery under RCFC 26, 45, and 56(e) in this action. Preservation includes taking reasonable steps to prevent the partial or full destruction, alteration, testing, deletion, shredding, incineration, wiping, relocation, migration, theft, or mutation of such material, as well as negligent or intentional handling that would make material incomplete or inaccessible.

6. **Further Instructions; Modification.** Either party may apply to the court for further instructions regarding, *inter alia*: (a) defendant's obligation to preserve specific categories of documents, data, or tangible things; (b) any aspect of the inspection or indexation tasks not herein clearly defined; and (c) allocating copying costs and maintaining the confidentiality of information contained in various records. Recognizing that the parties may perceive better ways of

accomplishing the purposes of this order, the court notes that joint motions to modify any of the procedures listed herein will likely be received favorably.

7. **Sanctions.** Failure to comply with this order may lead to the imposition of sanctions, as described in greater detail in the *Pueblo of Laguna* order, cited above.

8. **Dissemination.** This order shall be distributed by defendant to all relevant agencies, departments, offices, divisions, and individuals.

Francis M. Allegra
Judge

Based on the foregoing, pursuant to RCFC 16(c) and 26(c), as well as this court's inherent power to regulate its proceedings and maintain the integrity of its functions, IT IS ORDERED:[15]

1. **General Obligation to Preserve.** During the pendency of this litigation or until further order of the court, defendant, its agencies, and its employees must take reasonable steps to preserve every document, data or tangible thing in its possession, custody or control, containing information that is relevant to, or may reasonably lead to the discovery of information relevant to, the subject matter involved in the pending litigation. Plaintiff is reminded that it also has a similar duty to preserve evidence relevant to this case.

2. **Document Inspection.**

(a) The Department of the Interior ("DOI") shall move inactive Pueblo of Laguna records from the BIA Southwest Regional Office to the Office of Trust Records ("OTR"), in Albuquerque, New Mexico, at which location said inactive records shall be made available to plaintiff for purposes of inspection. At least 10 calender days prior to movement of the inactive records, DOI will provide plaintiff with a move plan, which plan shall include: an implementation schedule; a description or inventory of the records being moved; the method of transportation; the chain of custody; and the signature of the official responsible for the move. Compliance with the move plan may be monitored by plaintiff or its representative.

(b) After reviewing the inactive records at OTR and the Southern Pueblos Agency for privileged material, DOI shall make those records available for plaintiff's inspection, in accordance with the following schedule:

(i) On or before April 2, 2004, DOI shall provide plaintiff with any and all existing indices of inactive records or record boxes located at the OTR, the Southwest Regional Office, or the Southern Pueblos Agency.

(ii) On or before May 3, 2004, plaintiff shall designate the boxes or records listed in the provided indices that plaintiff wishes to review for Pueblo of Laguna trust records.

---

[15] Portions of the provisions that follow are drawn from the sample preservation order contained in the Manual for Complex Litigation § 40.25.

(iii) Within 49 days from the date on which plaintiff designates which boxes at OTR it wishes to inspect, DOI will begin to make available, on a rolling basis, the boxes at OTR for plaintiff's inspection.

(iv) Within 63 days from the date on which plaintiff designates which boxes at the Southern Pueblos Agency it wishes to inspect, DOI will begin to make available, on a rolling basis, the boxes at the Southern Pueblos Agency for plaintiff's inspection.

(c) Plaintiff generally shall have 63 days within which to inspect a designated record upon receiving notification from DOI that the designated record has become available for inspection, during which process plaintiff may identify relevant documents for production. This inspection period may be extended by the court for good cause shown. Defendant shall provide to plaintiff copies or electronic images of the documents identified by plaintiff pursuant to this provision within such time as is agreed to by the parties; barring such agreement, the parties shall each file with the court their proposed schedule for the production of such copies or images, with an explanation in support thereof.

(d) At such time as the inactive records identified by plaintiff have been copied or imaged by defendant, DOI may move those records from OTR and the Southern Pueblos Agency in accordance with its normal procedures and protocols for the movement of Indian trust records. In addition, DOI may move any boxes designated by plaintiff from OTR or the Southern Pueblos Agency that plaintiff has not reviewed within three months from the date on which DOI made those boxes available for plaintiff's inspection. DOI may, at any time, move boxes that have not been designated for inspection, according to normal procedures and protocols for the movement of Indian trust records. Nothing herein prevents plaintiff from also seeking to inspect relevant records from OTR, the BIA Southwest Regional Office, or the Southern Pueblos Agency in whatever location they may be found in the future.

3. **Indexation.**

(a) The parties shall meet and confer, as soon as practicable, and no later than April 19, 2004, to develop a plan for indexing documents, data and tangible things reasonably anticipated to be subject to discovery in this case. The resulting plan shall be submitted to this court as a proposed order under RCFC 16(e).

(b) The parties should attempt to reach agreement on all issues regarding the indexation of documents, data, and tangible things. These issues include, but are not necessarily limited to:

(i) the extent of the indexation obligation, identifying the types of material to be indexed, the subject matter, time frame, the authors and addressees, and key words to be used in identifying such materials;

(ii) the identification of persons responsible for carrying out the indexation;

(iii) whether indexation will require suspending or modifying any routine processes or procedures, with special attention to document-management programs and the recycling of computer data storage media;

(iv) the timing of the indexation process in relation to the movement of records, and inspection thereof, envisioned in paragraph 2, above;

(v) the methods to index any volatile but potentially discoverable material, such as voicemail, active data in databases, or electronic messages;

(vi) the anticipated costs of indexation and ways to reduce or share these costs; and

(vii) a mechanism to review and modify the indexation obligation as this case proceeds, eliminating or adding particular categories of documents, data, and tangible things.

(c) If, after conferring to develop an indexation plan, counsel do not reach agreement on the subjects listed under paragraph 3(b) of this order or on other material aspects of indexation, the parties shall file with the court, within seven days of the conference, a statement of the unresolved issues together with each party's proposal for their resolution of the issues

4. **Compliance.** Defendant shall establish a mechanism for monitoring compliance with this order and, on or before April 19, 2004, file a status report with the court describing that mechanism. Defendant's counsel shall immediately notify this court if, at any time, they become aware of a violation of this order (*e.g.*, the destruction or loss of documents).

5. **Definitions.** For purposes of this order:

(a) "Documents, data, and tangible things" is to be interpreted broadly to include writings; records; files; correspondence; reports; memoranda; calendars; diaries; minutes; electronic messages; voicemail; E-mail;

telephone message records or logs; computer and network activity logs; hard drives; backup data; removable computer storage media such as tapes, disks, and cards; printouts; document image files; Web pages; databases; spreadsheets; software; books; ledgers; journals; orders; invoices; bills; vouchers; checks; statements; worksheets; summaries; compilations; computations; charts; diagrams; graphic presentations; drawings; films; charts; digital or chemical process photographs; video; phonographic tape; or digital recordings or transcripts thereof; drafts; jottings; and notes. Information that serves to identify, locate, or link such material, such as file inventories, file folders, indices, and metadata, is also included in this definition.

(b) "Preservation" is to be interpreted broadly to accomplish the goal of maintaining the integrity of all documents, data, and tangible things reasonably anticipated to be subject to discovery under RCFC 26, 45, and 56(e) in this action. Preservation includes taking reasonable steps to prevent the partial or full destruction, alteration, testing, deletion, shredding, incineration, wiping, relocation, migration, theft, or mutation of such material, as well as negligent or intentional handling that would make material incomplete or inaccessible.

6. **Further Instructions; Modification.** Either party may apply to the court for further instructions regarding, *inter alia*: (a) defendant's obligation to preserve specific categories of documents, data, or tangible things; (b) any aspect of the inspection or indexation tasks not herein clearly defined; and (c) allocating copying costs and maintaining the confidentiality of information contained in various records. Recognizing that the parties may perceive better ways of accomplishing the purposes of this order, the court notes that joint motions to modify any of the procedures listed herein will likely be received favorably.

7. **Sanctions.** Failure to comply with this order may lead to the imposition of sanctions, as described in greater detail above.

8. **Dissemination.** This order shall be distributed by defendant to all relevant agencies, departments, offices, divisions, and individuals.

Francis M. Allegra
Judge

**THE PUEBLO OF LAGUNA, Plaintiff, v. THE UNITED STATES, Defendant.**

**No. 02-24 L**

**UNITED STATES COURT OF FEDERAL CLAIMS**

*60 Fed. Cl. 133*; *2004 U.S. Claims LEXIS 49*

**March 19, 2004, Filed**

**HEADNOTES**

Motion for document preservation order; Authority to issue order; Inherent powers; Article I courts; Judicial power; Integrity of judicial process; *28 U.S.C. § 174*; *28 U.S.C. § 2503(c)*; *RCFC 16(c)*; Require-ments for issuing preservation order; Past handling of tribal records indicative of risk of loss or destruction; Order issued requiring, *inter alia*, indexing and limited inspection of documents.

**COUNSEL:** [**1] Alan R. Taradash, Nordhaus, Haltom, Taylor, Taradash & Bladh, LLP, Albuquerque, New Mexico, for plaintiff.

James M. Upton, U.S. Department of Justice, Washington, D.C., with whom was Assistant Attorney General Thomas L. Sansonetti, for defendant.

**JUDGES:** Francis M. Allegra, Judge.

**OPINION BY:** ALLEGRA

**OPINION**

[*134] **ORDER**

**ALLEGRA, Judge:**

In this case, the Pueblo of Laguna tribe seeks an accounting and to recover for monetary loss and damages relating to the government's alleged mismanagement of the tribe's trust funds and other properties, including royalties from the exploitation of uranium ore reserves on the tribe's New Mexico reservation. This case is one of several such cases before the court, including *Jicarilla Apache Nation v. United States*, No. 02-25L and *Delaware Tribe of Indians v. United States*, No. 02-26L, in which the parties are currently pursuing alternative dispute resolution on claims totaling more than $ 550 million. Before the court is plaintiff's motion for a document preservation order - an identical motion has been filed in the *Jicarilla Apache* case.

The Pueblo requests that the court issue an order directing various government agencies to take steps [**2] to ensure the preservation and availability of documents, in various media, potentially relating to its claims against the government. Failure to do so, plaintiff contends, will result in the destruction or loss of relevant documentation, as evidenced by the government's mishandling of Indian records in cases pending before the U.S. District Court for the District of Columbia. For its part, defendant first argues that this [*135] court lacks jurisdiction to enter an order of the type requested by plaintiff. It also contends that the proposed order is unnecessary and would be overly burdensome, partly in light of existing record retention procedures at the government agencies most likely to be implicated by the tribe's claims.

At the outset, this court must address defendant's concerns regarding its authority to issue orders protecting potential evidence in this case. While defendant objects primarily to the form of the order requested by plaintiff - that of a preliminary injunction, rather than a protective order - it, nonetheless, argues that because this court is an Article I tribunal, it lacks the inherent powers afforded Article III courts to order the preservation of relevant evidence. [**3] This court disagrees.

"Certain implied powers must necessarily result to our Courts of justice from the nature of their institution," the Supreme Court has long recognized, "powers which cannot be dispensed with in a Court, because they are necessary to the exercise of all others." *United States v. Hudson, 11 U.S. 32, 7 Cranch 32, 34, 3 L. Ed. 259 (1812)*; *see also Chambers v. NASCO, Inc., 501 U.S. 32, 43, 115 L. Ed. 2d 27, 111 S. Ct. 2123 (1991)*; *Roadway Express, Inc. v. Piper, 447 U.S. 752, 764, 65 L. Ed. 2d 488, 100 S. Ct. 2455 (1980)*. These powers are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Link v. Wabash R.R. Co., 370 U.S. 626, 630-31, 8 L. Ed. 2d 734, 82 S. Ct. 1386 (1962)*; *see also Chambers, 501 U.S. at 43*; *Shepherd v. American Broad. Cos., 314 U.S. App. D.C. 137, 62 F.3d 1469, 1474 (D.C. Cir. 1995)*. They take various forms - for example, the power to control admission to the bar; to discipline attorneys who

appear before a court; to impose silence, respect and decorum in court proceedings; and to dismiss a case *sua sponte* for lack of prosecution. *See Chambers, 501 U.S. at 44-45*; [**4] *Link, 370 U.S. at 630-32*; *Ex parte Burr, 22 U.S. 529, 9 Wheat. 529, 531, 6 L. Ed. 152 (1824)*; *Anderson v. Dunn, 19 U.S. (6 Wheat.) 204, 5 L. Ed. 242 (1821)*; *see also* Robert J. Pushaw, "The Inherent Powers of Federal Courts and the Structural Constitution," *86 Iowa L. Rev. 735, 766-75 (2001)* (describing these and other inherent powers).

Decisional law recognizes yet another inherent power: the ability to order evidence preserved. To be sure, the "case law imposes a 'duty to preserve material evidence . . . not only during litigation but also . . . [during] that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation.'" *Renda Marine, Inc. v. United States, 58 Fed. Cl. 57, 60 (2003)* (quoting *Silvestri v. Gen. Motors Corp., 271 F.3d 583, 591 (4th Cir. 2001))*. [1] That requirement here is reinforced by statute and regulation. [2] Notwith-standing, courts have held that they have the inherent power to order that evidence be preserved and have, for good cause, required that specific procedures be adopted to ensure such preservation. *See, e.g., Illinois Tool Works, Inc. v. Metro Mark Prods. Ltd., 43 F. Supp. 2d 951, 954 (N.D. Ill. 1999)*; [**5] *In re Prudential Ins. Co. of America Sales Practices Litig., 169 F.R.D. 598, 600 (D.N.J. 1997)*; *see also* Manual for Complex Litigation (4th ed. 2004) (hereinafter "Manual for Complex Litigation") § 11.442 (noting that "before discovery starts, and perhaps before the initial conference, the court should consider whether to enter an order requiring the parties to preserve and retain documents, files, data, and records that may be relevant [*136] to the litigation"). According to one court, such preservation orders are "common in complex litigations," *HJB, Inc. v. American Home Prods. Corp.*, 1994 U.S. Dist. LEXIS 961, 1994 WL 31005, at *1 (N.D. Ill. Feb. 1, 1994), and are increasingly routine in cases involving electronic evidence, such as e-mails and other forms of electronic communication. *See Renda, 58 Fed. Cl. at 62-63*; *Wiginton v. Ellis, 2003 U.S. Dist. LEXIS 19128, 2003 WL 22439865, at * 2 (N.D. Ill. Oct. 27, 2003)*; *see also* Manual for Complex Litigation § 11.442, at 73 n.161 (listing other cases in which such orders have been entered); Kenneth J. Winters, "Advanced Discovery Issues: Discovery and Protection of Electronic Data," 2003 ALI-ABA 737, 746, 752-53 (2003). [**6]

1 *See also Kronisch v. United States, 150 F.3d 112, 126 (2d Cir. 1998)*; *see generally* Adam I. Cohen & David J. Lender, Electronic Discovery: Law and Practice (hereinafter "Electronic Discovery") § 3.01 (2004).

2 Various statutes and regulations independently obligate defendant to make and preserve various records to document its management of Indian trust assets. *See, e.g., 44 U.S.C. §§ 3101* (regarding preservation), 3309 (regarding disposal); *36 C.F.R. § 1228.30* (approval of Comptroller General for destruction of certain records); *30 C.F.R. §§ 212.50* (record retention regarding oil and gas leases); 212.200 (record retention regarding minerals); *see also Cobell v. Norton, 345 U.S. App. D.C. 141, 240 F.3d 1081, 1105 (D.C. Cir. 2001)*; *Pueblo of San Ildefonso v. United States, 35 Fed. Cl. 777, 788 (1996)* ("It is well settled that a trustee such as defendant is under a duty to keep and render clear and accurate accounts with respect to administration of the trust.").

[**7] Contrary to defendant's importunings, this court plainly has the authority to issue such orders. That this court was established under Article I, rather than Article III, of the Constitution is, in this context, a distinction without a difference. Several reasons compel this conclusion. First, the Supreme Court has held that Article I courts exercise the judicial power of the United States. *See Freytag v. Comm'r, 501 U.S. 868, 889, 115 L. Ed. 2d 764, 111 S. Ct. 2631 (1991)*. [3] Indeed, in *Williams v. United States, 289 U.S. 553, 564-65, 77 L. Ed. 1372, 53 S. Ct. 751, 77 Ct. Cl. 794 (1933)*, the Court held that this court's antecedent, the Court of Claims, then an Article I court, exercised such judicial power by virtue of its ability to render final judgments. [4] Building on this foundation, the Federal Circuit has held that Article I courts possess inherent powers based on twin necessities: the "need to control proceedings before such court and the need to protect the exercise of judicial authority in connection with those proceedings." *In re Bailey, 182 F.3d 860, 864 n.4 (Fed. Cir. 1999)* (holding this as to the United States Court of Veterans Appeals). [5] To meet like needs, this court too must possess inherent [**8] powers, at least sufficient to protect the integrity of its judicial functions - and, in various settings, the Federal Circuit has so held. [6] Finally, indirect confirmation that this court possesses inherent powers may be found in the Federal Circuit's repeatedly holding that this court may resolve only "cases or controversies." *See Anderson v. United States, 344 F.3d 1343, 1349-50 (Fed. Cir. 2003)*; *Glass v. United States, 258 F.3d 1349, 1355-56 (Fed. Cir. 2001)*; *see also Smith v. United States, 58 Fed. Cl. 374, 381 (2003)*; *CW Gov't Travel, 46 Fed. Cl. 554, 557-58*. This limitation again derives, at least partly, from the recognition that this court is truly a court, a concept that brings with it both limitations and imperatives.

3 *See also Matter of Dep't of Defense Cable Television, 35 Fed. Cl. 114, 116 (1996)*; *cf.*

*Cofield v. United States, 25 Cl. Ct. 465, 467 (1992).*

4 In so concluding, the court traced the legislative history of the court, giving particular emphasis to the Act of March 3, 1863, c. 92, 12 Stat. 765, which, for the first time, authorized the court to render final judgments. Commenting on the development of the court's jurisdiction through the passage of the Tucker Act in 1887, the Court concluded, in words seemingly applicable to this court:

> By these provisions it is made plain that the Court of Claims, originally nothing more than an administrative or advisory body, was converted into a court, in fact as well as in name, and given jurisdiction over controversies which were susceptible of judicial cognizance. It is only in that view that the appellate jurisdiction of this court in respect of the judgments of that court could be sustained, or concurrent jurisdiction appropriately be conferred upon the federal district courts. The Court of Claims, therefore, undoubtedly, in entertaining and deciding these controversies, exercises judicial power . . . .

*Williams, 289 U.S. at 565.*

[**9]

5 *See also Daccarett-Ghia v. Comm'r, 315 U.S. App. D.C. 60, 70 F.3d 621, 624-25 (D.C. Cir. 1995)* (same as to U.S. Tax Court); *Case v. Case, 937 F.2d 1014, 1023 (5th Cir. 1991)* (same as to bankruptcy courts); *see also Clapp v. Comm'r, 875 F.2d 1396, 1399 (9th Cir. 1989).*

6 *See Becker v. United States, 50 Fed. Appx. 996 (Fed. Cir. 2002)* (inherent power to limit repetitious filings); *Cherokee Nation of Okl. v. United States, 124 F.3d 1413, 1416 (Fed. Cir. 1997)* (inherent power to stay proceedings); *Claude E. Atkins Enters., Inc. v. United States, 899 F.2d 1180, 1185 (Fed. Cir. 1990)* (inherent power to dismiss for lack of prosecution); *see also CW Gov't Travel, Inc. v. United States, 46 Fed. Cl. 554, 557-58 (2000)* (because this court exercises the judicial power of the United States, it has the inherent power to invoke the mootness doctrine).

At least once, when the shoe was on the other foot, defendant invoked this court's authority in seeking to enforce preservation orders against [**10] plaintiffs via sanctions for spoliation, seemingly unconcerned about whether [*137] this court was authorized to enter such orders *ab initio*. *See Columbia First Bank, FSB v. United States, 54 Fed. Cl. 693, 702-04 (2002)*; *see also Coltec Indus., Inc. v. United States*, No. 01-72T (order of May 14, 2003) (preservation order issued at behest of government). Here, however, defendant asseverates that this court lacks the ability to enter such orders because it is one of "limited jurisdiction." But, at least in this context, the latter observation is little more than a truism, as universally applicable to lower federal courts as it is generally unhelpful in resolving any specific issue of jurisdiction or authority. The pertinent question, rather, is whether the applicable limitations confine this court from taking actions to preserve evidence relevant to a pending case. And the answer is - they do not.

Indeed, several provisions of federal law cut the ground from under defendant's feet. For example, in *28 U.S.C. § 174 (2000)*, Congress unambiguously indicated that this court exercises "judicial power," and, in *28 U.S.C. § 1651(a) (2000)*, [**11] it included this court among those authorized by the *All Writs Act* to "issue all writs necessary or appropriate in aid of [its] jurisdiction and agreeable to the usages and principles of law." *See Branning v. United States, 11 Cl. Ct. 136, 138 (1986)* (holding the AWA applies to this court). On both counts, it thus appears that Congress intended this court to exercise powers in aid of its jurisdiction similar to those afforded other federal trial courts. In *28 U.S.C. § 2503(c) (2000)*, moreover, Congress authorized this court to "examine witnesses, receive evidence, and enter dispositive judgments." Maintaining the integrity of these functions, *a fortiori*, requires this court to be empowered to prevent abuses of its process, subsumed within is the ability to preserve relevant evidence - a power "necessary to the exercise of all others." *Hudson, 7 Cranch at 34*; *see also Chambers, 501 U.S. at 43.* A recent spoliation case explained the interrelationship of these concepts, indicating:

> the destruction of evidence can lead to manifest unfairness and injustice, for it increases the risk of an [**12] erroneous decision on the merits of the underlying cause of action and can increase the costs of litigation as parties attempt to reconstruct the destroyed evidence or to develop other evidence that may be less persuasive, less accessible or both.

*Trigon Ins. Co. v. United States, 204 F.R.D. 277, 285 (E.D. Va. 2001)*; *see also In re Prud. Ins. Co., 169 F.R.D. at 616* ("Document destruction inevitably hinders the administration of justice."). Finally, Congress has authorized this court to issue rules governing its proceedings. *See 28 U.S.C. § 2503(b) (2000)*. One of these, *RCFC 16(c)*, provides that the court "may take appropriate action" with respect to "the control and scheduling of discovery," "the need for adopting special procedures for managing potentially difficult or protracted actions" and any such "matters as may facilitate the just, speedy and inexpensive disposition of the action." *RCFC 16(c)(6), (12) and (16)*. Various courts have invoked the identical provisions in the Federal Rules of Civil Procedure in issuing preservation orders. *See, e.g., In re St. Jude Med., Inc.*, 2001 WL 1640056 (D. Minn. Aug. 21, 2001); [**13] *In re Del-Van Fin. Corp. Sec. Litig.*, 1991 WL 29140 (S.D.N.Y. Feb. 28, 1991); *In re Wirebound Boxes Antitrust Litig., 128 F.R.D. 250 (D. Minn. 1989)*; *see also* Electronic Discovery § 2.03[B]. [7]

7 *Accord: In re New England Mut. Life Ins. Co. Sales Practices Litig., 183 F.R.D. 33, 49 (D. Mass. 1998)*; *In re Centennial Techs. Litig., 20 F. Supp. 2d 119, 130 (D. Mass. 1997)*. The result in these cases should not be shocking because, alternatively, this court could, under *RCFC 26(c)*, order defendant to respond to document production requests that would require it to provide copies of the relevant documents to plaintiff. That, of course, would be the surest way to preserve the documents in question - it also would be the most burdensome.

For all these reasons, and relying particularly on *RCFC 16*, this court concludes that it has the power to preserve evidence and issue orders in furtherance thereof. But, the question [**14] remains whether it should exercise that power here, particularly as plaintiff urges. "Because of their very potency," the Supreme Court has cautioned, "inherent powers must be exercised with restraint and discretion." *Chambers, 501 U.S. at 44*; *see also* [*138] *Roadway Express, 447 U.S. at 764*. That restraint requires that one seeking a preservation order demonstrate that it is necessary and not unduly burdensome. *See Walker v. Cash Flow Consultants, Inc., 200 F.R.D. 613, 617 (N.D. Ill. 2001)*; *Adobe Sys., Inc. v. Sun South Prods. Inc., 187 F.R.D. 636, 642-43 (S.D. Cal. 1999)*; *see also* Sedona Conf. Working Group on Electronic Document Retention and Production, "The Sedona Principles: Best Practices Recommendations & Principles for Addressing Electronic Document Production," 4 Sedona Conf. J. 197, 217-18 (2003); Manual for Complex Litigation § 11.442, at 73 (court should determine if preservation order is "needed, the scope, duration, method of data preservation and other terms that will best preserve relevant matter without imposing undue burdens"). To meet the first prong of this test, the proponent ordinarily must show [**15] that absent a court order, there is significant risk that relevant evidence will be lost or destroyed - a burden often met by demonstrating that the opposing party has lost or destroyed evidence in the past or has inadequate retention procedures in place. *See In re Potash, 1994 U.S. Dist. LEXIS 20836, 1994 WL 1108312, at *8 (D. Minn. Dec. 5, 1994)*. More than that, the proponent must show that the particular steps to be adopted will be effective, but not overbroad - the court will neither lightly exercise its inherent power to protect evidence nor indulge in an exercise in futility. *Id*; *see also Prudential Ins. Co., 169 F.R.D. at 616-17*. [8]

8 Other courts have held that the requirements for issuing an injunction must be satisfied before a preservation order may issue. *See, e.g., Madden v. Wyeth, 2003 U.S. Dist. LEXIS 6427, 2003 WL 21443404, at *1 (N.D. Tex. Apr. 16, 2003)*; *Pepsi-Cola Bottling Co. of Olean v. Cargill, Inc., 1995 U.S. Dist. LEXIS 19735, 1995 WL 783610, at * 3-4 (D. Minn. Oct. 20, 1995)*; *Humble Oil & Refining Co. v. Harang, 262 F. Supp. 39, 42 (E.D. La. 1966)*. The court, however, believes that the more recent of these decisions ignore significant changes made to the Federal Rules of Civil Procedure since the 1960s, further establishing the case management powers of judges. In the court's view, a document preservation order is no more an injunction than an order requiring a party to identify witnesses or to produce documents in discovery. *See Mercer v. Magnant, 40 F.3d 893, 896 (7th Cir. 1994)*. While such pretrial and discovery orders take the basic form of an injunction (an order to do or not to do something), the decisional law suggests that, in issuing them, courts need not observe the rigors of the four-factor analysis ordinarily employed in issuing injunctions. *See Reich v. Muth*, 1993 WL 741997, at *1-2 (E.D. Va. July 28, 1993); *Fed. Election Comm'n v. GOPAC, Inc., 897 F. Supp. 615, 617-18 (D.D.C. 1995)*; *see also Casey v. Planned Parenthood of South-eastern Pa., 14 F.3d 848, 854 (3d Cir. 1994)* (distinguishing such pretrial orders from injunctions for appeal purposes); *Matter of Establishment Inspection of Skill Corp., 846 F.2d 1127, 1129 (7th Cir. 1988)* (same). In the court's view, the same ought to hold true for preservation orders. In particular, contrary to defendant's claim, the court sees no reason for it to consider whether plaintiff is likely to be successful on the merits of its case in deciding whether to protect

records from destruction. In the court's view, such an approach would be decidedly to put the cart before the horse.

[**16] To support its claim that, absent a record retention order, relevant records likely will be lost or destroyed, plaintiff relies heavily on what has transpired in *Cobell v. Norton*, No. 96-1285, an action pending in the United States District Court for the District of Columbia that seeks an accounting for some 500,000 Indians and their heirs. In that case, Judge Lamberth has issued numerous opinions, from which the Pueblo has culled examples of the government's mishandling of Indian records, among them: many instances of the destruction of documents, including electronic records, containing, or possibly containing, Indian-related information; the unsatisfactory oversight of administrative procedures; the inability of management to respond effectively when made aware of violations; the general disrepair of many facilities in which Indian records have been stored; the insufficient implementation of regulations regarding Indian-record retention and the lack of suitable systems and methods for ensuring preservation; the lack of security for computers containing Indian data; and numerous examples of improper attempts to transfer Indian records. [9] Significantly, the opinions reflect [**17] that many of the [*139] weaknesses identified by the district court have continued notwithstanding efforts by the Department of Interior and other government agencies to make meaningful administrative changes. While not agreeing to each of these findings (and the overtones and undertones associated therewith), defendant does not contest that documents or data relevant to the *Cobell* litigation have been lost or destroyed.

9 *See, e.g., Cobell v. Norton, 283 F. Supp. 2d 66, 159-60 (D.D.C. 2003), stayed pending appeal, 2004 U.S. App. LEXIS 1364, 2004 WL 210700 (D.C. Cir. Jan. 28, 2004)* (discussing failure to prevent destruction of or to take reasonable measures to preserve trust records); *Cobell v. Norton, 201 F. Supp. 2d 145, 147-48 (D.D.C. 2002)* (concerning record transfers and destruction).

While many of the agencies involved in *Cobell* are also involved here, defendant notes that a different set of records is at issue - indeed, both parties readily admit that the record retention orders [**18] issued by Judge Lamberth do not, as yet, cover these records. [10] Yet, in the court's view, the failures evidenced in *Cobell* appear to be so pervasive and systematic as to provide ample support for the issuance of a document preservation order in this case. If nothing else such a preservation order will reemphasize that defendant needs to take extraordinary precautions, at least equivalent to those more recently adopted in *Cobell,* to prevent either the purposeful or inadvertent destruction or loss of records. Such an order also serves as fair warning that sanctions may be imposed should defendant instead fail adequately to protect records relevant to this action. From a procedural standpoint, indeed, such an order satisfies various preconditions not only to the possible application of the spoliation doctrine, [11] but also the imposition of sanctions under either *RCFC 16(f) or 37(b).*

10 In discussing the findings in *Cobell*, the Pueblo notes that at least ten tribal breach of trust cases have been filed with the district court, rather than this court: *Assiniboine and Sioux Tribes of the Fort Peck Indian Reservation v. Norton*, No. 02-35 (D.D.C. filed Jan.7, 2002); *Standing Rock Sioux Tribe v. Norton, 2002 U.S. Dist. LEXIS 27232, No. 02-41 (D.D.C. filed Jan. 8, 2002)*; *Three Affiliated Tribes of the Fort Berthold Reservation v. Norton, 2002 U.S. Dist. LEXIS 27233, No. 02-253 (D.D.C. filed Feb. 8, 2002)*; *Shoshone-Bannock Tribes of the Fort Hall Reservation v. Norton, 2002 U.S. Dist. LEXIS 27236, No. 02-254 (D.D.C. filed Feb. 8, 2002)*; *Chippewa Cree Tribe of the Rocky Boy's Reservation v. Norton, 2002 U.S. Dist. LEXIS 27234, No. 02-276 (D.D.C. filed Feb. 11, 2002)*; *Crow Tribe of Indians v. Norton, 2002 U.S. Dist. LEXIS 27235, No. 02-284 (D.D.C. filed Feb. 13, 2002)*; *Rosebud Sioux Tribe v. Norton*, No. 02-184 (D.D.C. filed Feb. 1, 2002); *Confederated Tribes of the Warm Springs Reservation v. United States, 2003 U.S. Dist. LEXIS 25012, No. 02-2040 (D.D.C. filed Oct. 18, 2002)*; *Santee Sioux Tribe v. Norton*, 03-1602 (D.D.C. filed July 28, 2003); *Yankton Sioux Tribe v. Norton*, No. 03-1603 (D.D.C. filed July 28, 2003). It is unclear how the district court has jurisdiction over these matters, which, though veiled as requests for injunctive relief, appear ultimately designed to obtain monetary relief. On this point, the Federal Circuit, in *Consolidated Edison Co. v. United States, 247 F.3d 1378 (Fed. Cir. 2001)* (en banc), instructed that "[a] party may not circumvent the [Court of Federal Claim's] exclusive jurisdiction by framing a complaint in the district court as one seeking injunctive, declaratory or mandatory relief where the thrust of the suit is to obtain money from the United States." *Id. at 1385* (quoting *Rogers v. Ink, 766 F.2d 430, 434 (10th Cir. 1985)*); *cf. Cobell v. Norton, 345 U.S. App. D.C. 141, 240 F.3d 1081, 1094-95 (D.C. Cir. 2001)*. Moreover, the Administrative Procedure Act waives sovereign immunity for district court suits only if "there is no other adequate remedy." *5*

*U.S.C. § 704 (2000)*. Yet, to the extent that these other actions seek an accounting, that remedy is available here as a prelude to the award of monetary damages. *See, e.g., Minnesota Chippewa Tribe Red Lake Band v. United States, 768 F.2d 338, 342 (Fed. Cir. 1985)*; *Klamath and Modoc Tribes v. United States, 174 Ct. Cl. 483, 486-91 (1966)* (construing *28 U.S.C. § 1505*); *see also United States v. Mitchell, 463 U.S. 206, 219-222, 77 L. Ed. 2d 580, 103 S. Ct. 2961 (1983)*. For now, this court is left to wonder from afar, but if these tribes eventually file suit in this court seeking monetary relief, the question whether the district court properly has jurisdiction over their existing cases could become critical. *See Christopher Village, L.P. v. United States, 360 F.3d 1319, 2004 U.S. App. LEXIS 4379, 2004 WL 414638 (Fed. Cir. Mar. 8, 2004)* (holding that where a district court lacks jurisdiction under the APA, this court is not subsequently bound by the district court's judgment).

[**19]

11 It has long been the rule that spoliators may not benefit from their wrongdoing under the regula *omnia presumuntur contra spoliatorem. See West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779 (2d Cir. 1999)*; *Kronisch v. United States, 150 F.3d 112, 126 (2d Cir. 1998)*. While decisions in this court generally do not apply the spoliation doctrine absent a finding of bad faith, *see, e.g., Renda, 58 Fed. Cl. at 60*, the Federal Circuit, in *Confederated Tribes of Warm Springs Reservation v. United States, 248 F.3d 1365, 1373-74 (Fed. Cir. 2001)*, suggested that the result may be different when the United States fails to preserve documents in its fiduciary role to a tribe. Indeed, *Warm Springs* strongly indicates that, the spoliation doctrine aside, adverse inferences might be drawn in this case were it shown that defendant inadvertently destroyed or otherwise lost documents critical to the determination of liability or damages herein. *Id. at 1373* (noting that "under trust law principles, if a trustee fails to keep proper accounts, 'all doubts will be resolved against him and not in his favor'") (quoting William F. Fratcher, Scott on Trusts, § 172 (4th ed.1987)); *see also Shoshone Indian Tribe of Wind River Reservation v. United States, 58 Fed. Cl. 77, 93-94 (2003)*.

[**20] [*140] But, should such an order include terms beyond simply requiring defendant to preserve any evidence relevant to this case? Plaintiff makes specific proposals in this regard. It would have this court prohibit generally the destruction of records relevant to this case absent its prior written concurrence or further order from this court. It would also have this court impose significant restrictions on the inter- and intra-agency transfer of such records, including the transfer of records from the Department of the Interior to the National Archives and Records Administration, by essentially requiring that plaintiff be offered an opportunity to examine such records prior to their movement. [12] Defendant offers only muted opposition to the proposed limitations on record destruction, owing to its belief that such records will not be destroyed under existing agency directives. Initially, however, it vigorously opposed the plaintiff's proposed limitations on record transfers, offering affidavits from officials at various of the potentially affected agencies, describing how plaintiff's inspection requirements would severely disrupt not only routine daily transfers of paper and electronic records, [**21] but also the planned consolidation of tribal records at a new Federal Records Center in Lenexa, Kansas. [13] In the past few days, however, defendant proposed its own inspection procedures - albeit without indicating whether, in its view, this court now has jurisdiction to issue such an order. Defendant's inspection regime differs from plaintiff's in several key regards; most notably, it only applies to inactive records at the Department of Interior's Southwest Regional Office and Southern Pueblos Agency that are scheduled for transfer to the Lenexa facility.

12 Initially, plaintiff proposed that no transfer of records occur without its concurrence or this court's order; in response to objections raised by defendant, plaintiff, more recently, has refined its request, focusing on limiting the transfer of records until it has been afforded a reasonable opportunity to inspect those records.

13 These affidavits indicate, among other things, that the transfer protocol that plaintiff originally proposed would particularly impact agencies, such as the Treasury Department's Financial Management Services and Bureau of the Public Debt, that are not primarily charged with dealing with the tribe, but retain financial information regarding the Pueblo in their general financial records. Officials from these agencies indicate that compliance with the transfer protocol would be particularly burdensome, as it would apply to duplicate copies of records. They indicate that the drain of resources associated with preserving and making available these records could jeopardize the ability of these agencies to perform other critical functions.

[**22] Based on its review of the *Cobell* opinions, the affidavits filed by the parties and a comparison of the

parties' respective proposals on inspections, the court declines to adopt the broader steps proposed by plaintiff. As a threshold matter, the court sees little purpose in requiring defendant to obtain plaintiff's concurrence before destroying relevant documents. Assuming such a requirement were adopted, plaintiff would never receive such a request - such would be the case whether agency personnel comply with the existing policies precluding the destruction of document or inadvertently destroy records in contravention of those policies. In the court's view, the better course is to reemphasize that documents should not be destroyed and create incentives to ensure that happens. Regarding the proposed transfer restrictions, the court finds that affording plaintiff a defined period within which to inspect every relevant record to be transferred would unduly burden the operations of various agencies not only by impacting the day-to-day movement of records, but also by injecting plaintiff into agency processes already designed to avoid the loss or destruction of records. While plaintiff [**23] has been willing to adjust its demands to minimize such burdens, the court remains concerned that adopting the broader inspection procedures plaintiff seeks might inadvertently lead to more, rather than less, records being lost or destroyed. Thus, as to plaintiff's broader transfer protocols, the court believes, for the moment, that the benefits associated with plaintiff's proposal are outweighed by the costs and burdens those steps would impose.

Nonetheless, the court sees no reason not to adopt, with minor modifications, the inspec-tion protocol defendant now proposes for records to be transferred from Interior's [*141] Southwest Regional Office and Southern Pueblos Agency to the Lenexa facility. This protocol has procedures similar to those proposed by plaintiff, albeit on a broader scale. In lieu of the other measures proposed by plaintiff, the court will order defendant to: (i) preserve all the documents, data and tangible things in question (including those subject to the above inspection regime); (ii) index all the documents, data and tangible things reasonably anticipated to be subject to discovery in this case, including those subject to the inspection regime, to ensure some baseline [**24] by which to gauge defendant's compliance with this order and the effectiveness of the record retention policies adopted by the agencies; and (iii) report immediately any destruction or loss of records. In the court's view, the looming specter of sanctions - which the case law suggests may be severe, to and including the entry of a default judgment [14] - provides the incentive, albeit in a negative way, needed to effectuate this preservation plan. To be sure, this approach heavily relies upon the expectation that defendant - and not this court - is best situated to review the govern-ment's record retention processes and ensure their continued effectiveness. If, as may have occurred in *Cobell,* the government's conduct falls short of this expectation, the court will be forced to intercede and take such steps as are necessary to ensure the integrity of its processes - steps that may bypass preservation plans altogether and instead authorize expedited discovery. *See Antioch Co. v. Scrapbook Borders, Inc., 210 F.R.D. 645, 651 (D. Minn. 2002)* (ordering expedited discovery to preserve electronic records).

14 *See Wm. T. Thompson Co. v. Gen. Nutrition Corp., 593 F. Supp. 1443, 1456 (C.D. Cal. 1984)* (imposing monetary sanctions and default judgment as the result of violation of preservation order); *cf. In re Potash, 1994 U.S. Dist. LEXIS 20836, 1994 WL 1108312, at *8* (refusing to enter a document preservation order based on the parties' awareness of the "dire consequences" attendant upon the failure to preserve documents).

[**25] Based on the foregoing, pursuant to *RCFC 16(c) and 26(c),* as well as this court's inherent power to regulate its proceedings and maintain the integrity of its functions, **IT IS ORDERED**: [15]

1. **General Obligation to Preserve.** During the pendency of this litigation or until further order of the court, defendant, its agencies, and its employees must take reasonable steps to preserve every document, data or tangible thing in its possession, custody or control, containing information that is relevant to, or may reasonably lead to the discovery of information relevant to, the subject matter involved in the pending litigation. Plaintiff is reminded that it also has a similar duty to preserve evidence relevant to this case.

2. **Document Inspection.**

(a) The Department of the Interior ("DOI") shall move inactive Pueblo of Laguna records from the BIA Southwest Regional Office to the Office of Trust Records ("OTR"), in Albuquerque, New Mexico, at which location said inactive records shall be made available to plaintiff for purposes of inspection. At least 10 calender days prior to movement of the inactive records, DOI will provide plaintiff with a move plan, which [**26] plan shall include: an implementation schedule; a description or inventory of the records being moved; the method of transportation; the chain of custody; and the signature of the official responsible for the move. Compliance with the move plan

may be monitored by plaintiff or its representative.

(b) After reviewing the inactive records at OTR and the Southern Pueblos Agency for privileged material, DOI shall make those records available for plaintiff's inspection, in accordance with the following schedule:

(i) On or before April 2, 2004, DOI shall provide plaintiff with any and all existing indices of inactive records or record boxes located at the OTR, the [*142] Southwest Regional Office, or the Southern Pueblos Agency.

(ii) On or before May 3, 2004, plaintiff shall designate the boxes or records listed in the provided indices that plaintiff wishes to review for Pueblo of Laguna trust records.

(iii) Within 49 days from the date on which plaintiff designates which boxes at OTR it wishes to inspect, DOI will begin to make available, on a rolling basis, the boxes at OTR for plaintiff's inspection.

(iv) Within 63 days from the date on which plaintiff designates which boxes at the Southern [**27] Pueblos Agency it wishes to inspect, DOI will begin to make available, on a rolling basis, the boxes at the Southern Pueblos Agency for plaintiff's inspection.

(c) Plaintiff generally shall have 63 days within which to inspect a designated record upon receiving notification from DOI that the designated record has become available for inspection, during which process plaintiff may identify relevant documents for production. This inspection period may be extended by the court for good cause shown. Defendant shall provide to plaintiff copies or electronic images of the documents identified by plaintiff pursuant to this provision within such time as is agreed to by the parties; barring such agreement, the parties shall each file with the court their proposed schedule for the production of such copies or images, with an explanation in support thereof.

(d) At such time as the inactive records identified by plaintiff have been copied or imaged by defendant, DOI may move those records from OTR and the Southern Pueblos Agency in accordance with its normal procedures and protocols for the movement of Indian trust records. In addition, DOI may move any boxes designated by plaintiff [**28] from OTR or the Southern Pueblos Agency that plaintiff has not reviewed within three months from the date on which DOI made those boxes available for plaintiff's inspection. DOI may, at any time, move boxes that have not been designated for inspection, according to normal procedures and protocols for the movement of Indian trust records. Nothing herein prevents plaintiff from also seeking to inspect relevant records from OTR, the BIA Southwest Regional Office, or the Southern Pueblos Agency in whatever location they may be found in the future.

3. **Indexation.**

(a) The parties shall meet and confer, as soon as practicable, and no later than April 19, 2004, to develop a plan for indexing documents, data and tangible things reasonably anticipated to be subject to discovery in this case. The resulting plan shall be submitted to this court as a proposed order under *RCFC 16(e)*.

(b) The parties should attempt to reach agreement on all issues regarding the indexation of documents, data, and tangible things. These issues include, but are not necessarily limited to:

> (i) the extent of the indexation obligation, identifying the types of material to be indexed, [**29] the subject matter, time frame, the authors and addressees, and key words to be used in identifying such materials;
>
> (ii) the identification of persons responsible for carrying out the indexation;
>
> (iii) whether indexation will require suspending or modifying any routine processes or procedures, with special atten-

tion to document-management programs and the recycling of computer data storage media;

(iv) the timing of the indexation process in relation to the movement of records, and inspection thereof, envisioned in paragraph 2, above;

(v) the methods to index any volatile but potentially discoverable material, such as voicemail, active data in databases, or electronic messages;

(vi) [*143] the anticipated costs of indexation and ways to reduce or share these costs; and

(vii) a mechanism to review and modify the indexation obligation as this case proceeds, eliminating or adding particular categories of documents, data, and tangible things.

(c) If, after conferring to develop an indexation plan, counsel do not reach agreement on the subjects listed under paragraph 3(b) of this order or on other material aspects of indexation, the parties shall file with [**30] the court, within seven days of the conference, a statement of the unresolved issues together with each party's proposal for their resolution of the issues

4. **Compliance**. Defendant shall establish a mechanism for monitoring compliance with this order and, on or before April 19, 2004, file a status report with the court describing that mechanism. Defendant's counsel shall immediately notify this court if, at any time, they become aware of a violation of this order (*e.g.*, the destruction or loss of documents).

5. **Definitions.** For purposes of this order:

(a) "Documents, data, and tangible things" is to be interpreted broadly to include writings; records; files; correspondence; reports; memoranda; calendars; diaries; minutes; electronic messages; voicemail; E-mail; telephone message records or logs; computer and network activity logs; hard drives; backup data; removable computer storage media such as tapes, disks, and cards; printouts; document image files; Web pages; databases; spreadsheets; software; books; ledgers; journals; orders; invoices; bills; vouchers; checks; statements; worksheets; summaries; compilations; computations; charts; diagrams; graphic [**31] presentations; drawings; films; charts; digital or chemical process photographs; video; phonographic tape; or digital recordings or transcripts thereof; drafts; jottings; and notes. Information that serves to identify, locate, or link such material, such as file inventories, file folders, indices, and metadata, is also included in this definition.

(b) "Preservation" is to be interpreted broadly to accomplish the goal of maintaining the integrity of all documents, data, and tangible things reasonably anticipated to be subject to discovery under *RCFC 26, 45, and 56(e)* in this action. Preservation includes taking reasonable steps to prevent the partial or full destruction, alteration, testing, deletion, shredding, incineration, wiping, relocation, migration, theft, or mutation of such material, as well as negligent or intentional handling that would make material incomplete or inaccessible.

6. **Further Instructions; Modification.** Either party may apply to the court for further instructions regarding, *inter alia*: (a) defendant's obligation to preserve specific categories of documents, data, or tangible things; (b) any aspect of the inspection or indexation tasks not [**32] herein clearly defined; and (c) allocating copying costs and maintaining the confidentiality of information contained in various records. Recognizing that the parties may perceive better ways of accomplishing the purposes of this order, the court notes that joint motions to modify any of the procedures listed herein will likely be received favorably.

7. **Sanctions**. Failure to comply with this order may lead to the imposition of sanctions, as described in greater detail above.

8. **Dissemination**. This order shall be distributed by defendant to all relevant agencies, departments, offices, divisions, and individuals.

15 Portions of the provisions that follow are drawn from the sample preservation order contained in the Manual for Complex Litigation § 40.25.

Francis M. Allegra

Judge